ELMORE, Judge.
*885 James H. Terrell, Jr. (defendant) appeals from a judgment entered after a jury convicted him of possessing a photographic image from secretly peeping, second-degree sexual exploitation of a minor, and twelve counts of third-degree sexual exploitation of a minor. This case presents the issue of how to apply the private-search doctrine to a follow-up police search for one potential contraband image among several other non-incriminating images stored on an electronic storage device. Or, put another way, to what extent the private-search doctrine authorizes police to conduct, without a warrant, a follow-up search for digital data on a privately searched electronic storage device.
Defendant's long-term girlfriend, Jessica Jones, opened defendant's briefcase when he was at work in order to search for information about his housekeeper in the Philippines while he was working overseas on a prior military contract job. Among employment papers and other personal effects, she found three USB flash drives (hereinafter "thumb drives"). Jones plugged each thumb drive into a computer. One of those thumb drives contained data. Jones clicked through its multiple digital file folders and subfolders until she found one subfolder containing images. After scrolling through several non-incriminating images, she saw one image of her nine-year-old granddaughter sleeping without a shirt. Jones believed the image was inappropriate, summoned authorities, and surrendered the thumb drive, which was secured in an evidence locker.
Later, an officer conducted a warrantless search through the images on the thumb drive to locate the granddaughter image. But during his follow-up search, the officer allegedly discovered images of other partially or fully nude minors that Jones never viewed. Using this information to support his warrant application, the officer obtained a search warrant to forensically examine the thumb drive's contents. The *886 executed search warrant yielded twelve incriminating images located in a different subfolder than the granddaughter image.
Defendant moved to suppress the contents of the thumb drive. He alleged that the officer had conducted an illegal warrantless search. He further sought to suppress the images recovered during the forensic examination under the search warrant as being fruit of the previous unlawful search. Defendant's motion was denied. The trial court determined that Jones's private viewing of the thumb drive effectively frustrated defendant's expectation of privacy in its contents and, thus, the officer's warrantless search was lawful under the private-search exception to the warrant requirement and did not violate defendant's Fourth Amendment rights.
On appeal, defendant contends the trial court erred by denying his motion to suppress the thumb drive's contents because the search warrant executed was based on illegally obtained evidence from the officer's *723 warrantless search. He contends the trial court erred by concluding that Jones's prior search through the thumb drive effectively frustrated his expectation of privacy in its entire contents, thereby authorizing the officer to search, without a warrant, through all of the images on that device. He further contends the trial court's finding that the officer viewed incriminating images that Jones never viewed necessarily establishes that his subsequent search unconstitutionally exceeded the scope of Jones's earlier one.
We ultimately hold that the trial court reversibly erred by concluding that the officer's warrantless search was lawful under the private-search doctrine and, therefore, did not violate defendant's Fourth Amendment rights. However, because the record is insufficient for us to determine whether the trial court would have determined that the search warrant executed was supported by probable cause without the tainted evidence obtained during the officer's unlawful search, we remand this matter to the trial court to determine the validity of the search warrant.
I. Background
During their long-term relationship, James H. Terrell, Jr. (defendant) and Jessica Jones had lived together for over ten years and had two children together. Jones also had a daughter from another relationship, Cindy, who has a daughter, Sandy.[1]
*887 Defendant served in the United States Marine Corps and after he left service, he began working various overseas military contractor jobs. When he returned from one such job in the Philippines in February 2013, he resumed living with Jones until January 2014.
On 13 January 2014, while defendant was at work, Jones searched his belongings for information about his housekeeper in the Philippines. She opened his briefcase and discovered, among employment paperwork and other personal effects, that it contained three USB thumb drives.
Jones plugged each thumb drive into a home computer. Two of the thumb drives were blank, but the third thumb drive, which was purple in color, contained data. On the purple thumb drive, Jones found a subfolder containing images and scrolled through various non-incriminating images until she discovered an image of her nine-year-old granddaughter, Sandy, that was taken the day after Thanksgiving. In the image, Sandy was sleeping, partially nude from the waist up with her breasts exposed (hereinafter "the granddaughter image"). Once Jones saw the granddaughter image, she stopped scrolling through the images and unplugged the thumb drive. Jones sought counsel from her preacher, who recommended contacting authorities. Jones also informed her daughter, Cindy, who is Sandy's mother, and Cindy expressed her desire to press charges.
That evening, Jones and Cindy brought the purple thumb drive to the Onslow County Sheriff's Department and reported to Detective Lucinda Hernandez that it contained the granddaughter image. Detective Hernandez did not ask to see the granddaughter image or open the thumb drive to view it but secured the thumb drive in an evidence locker.
The next day, Detective Eric Bailey was assigned to the case. He reviewed Detective Hernandez's report, and then interviewed Jones and Cindy, who also reported to him that the thumb drive contained the granddaughter image. After the interview, Detective Bailey decided to examine the thumb drive to verify their report. At Detective Bailey's request, the thumb drive was removed from the evidence locker, and a crime scene investigation (CSI) technician with the sheriff's department plugged it into a computer. During Detective Bailey's search for the granddaughter image, he scrolled through several non-incriminating images and allegedly saw images of other fully or partially nude minor females posing in sexual positions, images that Jones neither observed nor reported.
On 5 February 2014, Detective Bailey applied for a warrant to search, inter alia , the purple thumb drive for "contraband images of *888 child pornography and evidence of additional victims and crimes." In his application, Detective Bailey alleged that Jones reported that she saw the granddaughter image on defendant's purple thumb drive, that Jones *724 reported her other daughter "several years ago" alleged that defendant "touched [her] down there," and that Jones also reported she found a floppy disk in the bed of defendant's truck about fifteen years ago that contained images of child pornography. According to Detective Bailey, an agent with the State Bureau of Investigation (SBI) refused to conduct a "forensic evaluation [of the thumb drive] based on [that] search warrant" and "asked [him] to put additional information in the search warrant."
On 5 May 2014, Detective Bailey applied for another search warrant, this time adding allegations that he personally reviewed the thumb drive and saw "several partially nude photographs of [the granddaughter]" as described by Jones, and that he also observed "several fully nude photographs of an unknown child standing beside and [sic] adult female in various sexual positions."
The SBI agent executing the search warrant forensically examined several electronic devices using complex forensic software that creates a mirror image of their contents. The forensic examination of the thumb drive yielded twelve other incriminating images located in a different subfolder than the granddaughter image. Ten of those images had been previously deleted, and therefore would not have been observable during Jones's or Detective Bailey's searches, but were extractable using a computer forensic tool.
Defendant was indicted for possession of a photographic image from secretly peeping for the granddaughter image, four counts of second-degree sexual exploitation of a minor, and twelve counts of third-degree sexual exploitation of a minor based on the twelve images recovered from the forensic examination. Three of the second-degree sexual exploitation charges were dropped but the remaining charges proceeded to trial.
Before trial, defendant moved to suppress the contents of the thumb drive, arguing that the executed search warrant was based on evidence illegally acquired during Detective Bailey's unlawful warrantless search. At the suppression hearing, defendant argued that Detective Bailey's thumb drive search violated his federal and state constitutional rights to be free from unreasonable searches. He further argued that Detective Bailey's warrantless search was not exempted by the private-search exception to the warrant requirement because it unconstitutionally exceeded the scope of Jones's prior search. Defendant emphasized that *889 Jones's search revealed only the granddaughter image, while Detective Bailey's search revealed images of other fully or partially nude minors that Jones never viewed. To satisfy its burden to establish that the evidence obtained during Detective Bailey's warrantless search was lawful, the State called Jones and Detective Bailey to testify.
According to Jones, when she plugged in the thumb drive, she opened various "folders and sub-folders" that she "did not think ... had a title." She explained that "the pictures were all in one folder and ... the other folders [contained] movies." After opening the "one" image folder, she scrolled those images. Jones saw "images of adult women and ... children, but they were not inappropriate, meaning they were clothed"; "pictures of a person that [defendant] alleged was his housekeeper over in the Philippines"; images of an adult she recognized as defendant's childhood friend, some clothed and some partially clothed; and then she saw the granddaughter image. Once she saw that image, Jones stopped scrolling through the images and unplugged the thumb drive. According to Jones, she never saw any images of defendant; images of her and defendant; nor images of nude minors, particularly no "images of a fully naked young ... female standing around adult women." Jones testified she told Detective Bailey that she "had discovered the image of [her] granddaughter lying in bed and she's partially unclothed" on the thumb drive.
According to Detective Bailey, after the thumb drive was plugged into the CSI computer, he was "going through checking it to try to find the [granddaughter image]." He explained that, while he was "scrolling through ... there was a lot of photos in there[,]" and he was "clicking trying to find exactly where [the] image [was] located ...." Detective Bailey viewed "multiple images of adult females and also [defendant] together clothed, nude, partially nude." He *725 then "continued [his] way down" and "finally happened upon the photograph of the granddaughter." He then stated that during his search, he "observed other young females, prepubescent females, unclothed, also some that were clothed."
The State presented no evidence describing the precise scope of either search Jones or Detective Bailey conducted on the thumb drive. Neither testified to the exact folder pathway they followed to arrive at the granddaughter image, identified which folders or subfolders they opened or reviewed, nor identified which subfolder of images they scrolled through to arrive at the granddaughter image.
At the conclusion of the suppression hearing, the trial court rendered an oral ruling denying defendant's motion. It concluded that "there was a private party who went into this [thumb drive] and, by doing so, *890 ... it frustrated the defendant's reasonable expectation of privacy as to the contents of that [thumb drive]." The trial court continued: "[W]hen [Detective Bailey] went into that same [thumb drive] ... to confirm what had been stated to him, he found additional matters and he did so in a manner that was, perhaps, more thoroughly [sic] than the initial examination by Ms. [Jones]. He ran into more images than what Ms. [Jones] ran into." Thus, the trial court determined, *726 Detective Bailey's warrantless search did not violate defendant's Fourth Amendment rights.
At trial, the twelve images were admitted into evidence and a computer forensic analyst published a mirror image copy of the thumb drive to the jury. The initial Windows Explorer display screen of the thumb drive revealed multiple closed digital file folders. According to the transcript, that initial screen revealed at least the following parent folders (but likely more, since the witness displaying its content to the jury was asked multiple times to "scroll down" to find certain folders): "bad stuff," "Terrell resume," and "DI info." Opening the "bad stuff" folder revealed at least the following subfolders: "me," "Swanee," "red bone," and "Cabaniia." The evidence showed that the granddaughter image was located in the "red bone" subfolder, while the twelve other images were located in the "Cabaniia" subfolder.
After the presentation of evidence, the jury convicted defendant of all charges based on the granddaughter image and the twelve images recovered from the search warrant executed on the thumb drive. The trial court sentenced defendant to twelve consecutive terms of five to fifteen months in prison, and a term of twenty to eighty-four months of imprisonment, to run concurrent with the last five-to-fifteen-month term. On 28 November 2016, the trial court entered its written order denying defendant's suppression motion. Defendant appeals.
II. Standard of Review
"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." State v. Jackson , 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015) (citation and quotation marks omitted). The trial court's legal conclusions "are fully reviewable on appeal." State v. Hughes , 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).
III. Arguments
Defendant contends the trial court erred by denying his motion to suppress the contents of the thumb drive seized from the executed *891 search warrant because it was based on illegal evidence obtained during Detective Bailey's unlawful search. He contends the trial court erred by concluding Jones's prior viewing of some images on the thumb drive effectively frustrated his expectation of privacy in the entire device, such that the private-search doctrine authorized Detective Bailey to search, without a warrant, through all of its digital data. Defendant cites to United States v. Jacobsen , 466 U.S. 109, 113-19, 104 S.Ct. 1652, 1656-59, 80 L.Ed. 2d 85 (1984) (establishing the private-search exception to the warrant requirement and instructing that the legality of a follow-up police search is limited by the degree it remains within the scope of the prior private search), to support his argument that because the trial court's findings establish that Detective Bailey's warrantless search exceeded the scope of Jones's earlier one, it was unlawful.
The State argues that the trial court properly determined that Detective Bailey's search was lawful under the private-search doctrine. The State contends that Detective Bailey's search was not unconstitutionally excessive in scope, since he merely examined the thumb drive "more thoroughly" than did Jones, citing to our decision in State v. Robinson , 187 N.C. App. 795, 798, 653 S.E.2d 889, 892 (2007) (holding that an officer viewing all of the footage of a videotape did not exceed the scope of a private search through only portions of the footage because the officer merely examined the "same materials ... more thoroughly than did the private part[y]" (citations and internal quotation mark omitted)). The State further contends that even if Detective Bailey's search was conducted more thoroughly, it was not unconstitutionally excessive in scope because he had "virtual certainty" what contraband the thumb drive contained, citing to Jacobsen , 466 U.S. at 118-22, 104 S.Ct. at 1659-61 (establishing the virtual-certainty requirement), and Rann v. Atchison , 689 F.3d 832, 836-37 (7th Cir. 2012) (holding that an officer did not exceed the scope of a private search by viewing more files on a memory card and zip drive when officers were "substantially certain" those devices stored only child pornography), cert. denied , 568 U.S. 1030, 133 S.Ct. 672, 184 L.Ed.2d 464 (2012).
We conclude that our decision in Robinson concerning the extent to which a private actor viewing portions of a videotape frustrates an individual's expectation of privacy in the entire videotape footage is simply inapplicable to searches for digital data on electronic storage devices. We therefore decline to extend the container analogy we applied to the videotape search in Robinson and hold a thumb drive should not be viewed as a single container for Fourth Amendment purposes. In light of this determination, we hold that the trial court erred by concluding that *892 Jones's thumb drive search effectively frustrated defendant's expectation of privacy in its entire contents.
We further hold that Detective Bailey's warrantless search was not authorized under the private-search doctrine, since the court's findings establish that Detective Bailey did not conduct his warrantless search with the requisite "virtual certainty" required under Jacobsen that the thumb drive contained only contraband, or that his inspection of its data would not reveal anything more than Jones already told him. However, because the trial court's order is insufficient for us to determine whether it would conclude that excising from the warrant application the evidence illegally obtained during Detective Bailey's unlawful search would still supply probable cause to issue the search warrant, we remand the matter to the trial court to make a determination, in the first instance, as to whether the remaining allegations in Detective Bailey's warrant application would have been sufficient.
IV. Analysis
"Both the United States and North Carolina Constitutions protect against unreasonable searches ...." State v. Otto , 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012) (citing U.S. Const. amend. IV ; N.C. Const. art. I, § 20 ). A warrantless police search is presumptively unreasonable unless the State proves that search was exempted from the warrant requirement. See Jacobsen , 466 U.S. at 114, 104 S.Ct. at 1657 ("[W]arrantless searches of [personal] effects are presumptively unreasonable." (footnote omitted)); State v. Cooke , 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982) ("[W]hen the State seeks to admit evidence discovered by way of a warrantless search in a criminal prosecution, it must first show how the former intrusion was exempted from the general constitutional demand for a warrant." (citations omitted)). The private-search doctrine provides one such exemption from the warrant requirement.
A. The Private-Search Doctrine
Under the private-search doctrine, an officer may duplicate a private search, without a warrant, in order to observe first-hand incriminating information a private searcher has revealed to him. The rationale behind the doctrine is that Fourth Amendment *727 protection extends only to governmental action; "it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected [solely] by a private individual ....' " Jacobsen , 466 U.S. at 113, 104 S.Ct. at 1656 (quoting Walter v. United States , 447 U.S. 649, 662, 100 S.Ct. 2395, 2404, 65 L.Ed. 2d 410 (1980) (Blackmun, J., dissenting)). Once an individual's privacy interest in particular information has been frustrated by a private actor, who *893 then reveals that information to police, the police may use that information, even if obtained without a warrant. See id. at 117, 104 S.Ct. at 1658-59 (explaining that the private-search doctrine "standard follows from the analysis applicable when private parties reveal other kinds of private information to authorities"); see also id. ("Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now nonprivate information."). Thus, a duplicative police search exposing information already revealed by a private searcher is not a "search" under the Fourth Amendment, since it would intrude no existing privacy interest in that information.
But where a warrantless police search uncovers previously unrevealed private information, any additional privacy intrusion effected by that police search constitutes a Fourth Amendment "search," and police are therefore prohibited from using that information under the private-search doctrine. See id . at 117-118, 104 S.Ct. at 1658-59 ("[I]f the authorities use information with respect to which the expectation of privacy has not already been frustrated[,]" "the authorities have not relied on what is in effect a private search, and therefore presumptively violate the Fourth Amendment if they act without a warrant." (footnote omitted)). Thus, in determining whether information acquired during a warrantless police search can be used under the private-search doctrine, "the legality of the governmental search must be tested by the scope of the antecedent private search." Id. at 116, 104 S.Ct. at 1658 (citation omitted).
Additionally, "the Fourth Amendment's ultimate touchstone is 'reasonableness[.] ...' " Brigham City, Utah v. Stuart , 547 U.S. 398, 398, 126 S.Ct. 1943, 1944, 164 L.Ed. 2d 650 (2006). "The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred." Jacobsen , 466 U.S. at 115, 104 S.Ct. at 1657. Where information revealed by the private searcher is hidden from plain view, the reasonableness of a follow-up police search turns on whether the officer had "virtual certainty" that the item to be searched contained "nothing else of significance" and that his or her inspection of that item would not "tell him anything more than he already had been told" by a private searcher. Id. at 119, 104 S.Ct. at 1659.
B. Frustration of Privacy in Electronic Storage Devices
Defendant contends the trial court erred by concluding that Jones's prior viewing of the thumb drive effectively frustrated his expectation of privacy in its entire contents and, therefore, Detective Bailey was *894 authorized to search, without a warrant, through all of its digital data without violating his Fourth Amendment rights. The State retorts that this conclusion was proper, relying heavily on our decision in State v. Robinson , 187 N.C. App. 795, 653 S.E.2d 889 (2007). See id. at 798-99, 653 S.E.2d at 892 (analogizing a videotape search to a container search, and holding that a private partial viewing of video footage from a videotape "opened the container" to its entire contents, effectively frustrating the defendant's expectation of privacy in all of the videotape footage). We find the State's authority unpersuasive as applied to searches of digital data on electronic storage devices, and hold that defendant retained an expectation of privacy in the information not revealed by Jones's search.
An individual has "reasonable and substantial" privacy interests in the digital information stored on a thumb drive. See State v. Ladd , 246 N.C. App. 295, 303-04, 782 S.E.2d 397, 403 (2016) ("Defendant's privacy interests in the digital data stored on these [external data] storage devices are both reasonable and substantial."). While this Court has applied the private-search doctrine to a police search of a privately searched videotape, *728 see Robinson , 187 N.C. App. at 798-99, 653 S.E.2d at 892 (holding that a private search through some footage of a videotape frustrated an individual's privacy interests in the entire videotape footage), North Carolina courts have neither applied the private-search doctrine to a police search for digital data on a privately searched electronic storage device, nor defined the precise scope of a search for digital data on an electronic storage device, which bears directly on the extent to which a private search through a thumb drive may frustrate an individual's privacy interests in all of its digital data.
At issue is whether we should extend our holding in Robinson , as the State argues, treat the thumb drive as a single container for purposes of applying the private-search doctrine, and hold that Jones's prior search "opened the container" to all of the thumb drive's digital data, thereby authorizing Detective Bailey to conduct a "more thorough" examination of the entire device. We decline to do so.
C. A Thumb Drive is not a Single Container
In Robinson , the police viewed, without a warrant, the entire footage of a single videotape after a private searcher viewed portions of the footage and revealed to police that it showed the defendant engaging in sexual activities with two minors. 187 N.C. App. at 796, 653 S.E.2d at 891. The officer's videotape search confirmed what the private actor revealed to him-that the videotape contained footage of the defendant engaging in sexual activities with the two minors. Id. On appeal, we applied *895 the private-search doctrine and addressed whether the officer's search through the entire videotape footage exceeded the permissible scope of the private search through only portions of the footage. Id. at 797-99, 653 S.E.2d at 891-92.
The Robinson panel recognized that North Carolina courts had not defined the precise scope of a videotape search and turned to federal circuits courts of appeal for guidance. We adopted the Fifth and Eleventh Circuits' position that " 'the police do not exceed the scope of a prior private search when they examine the same materials .... more thoroughly than did the private parties.' " Id. at 798, 653 S.E.2d at 892 (quoting United States v. Runyan , 275 F.3d 449, 464 (5th Cir. 2001) ; citing United States v. Simpson , 904 F.2d 607, 610 (11th Cir. 1990) ). We treated the videotape as a container, analogized the videotape search to a container search, and concluded that the private partial "viewing of the videotape effectively frustrated the defendant's expectation of privacy as to the contents of the [entire] videotape[.] ..." Id. at 798, 653 S.E.2d at 892. Thus, because the prior private "viewing 'opened the container' of the videotape," we held that "the subsequent [police] viewing of the entire videotape was not outside the scope of [the private actor's] initial 'search.' " Id. at 799, 653 S.E.2d at 892 (citing Runyan , 275 F.3d at 465 ).
However, electronic storage devices are unlike videotapes, and a search of digital data on a thumb drive is unlike viewing one continuous stream of video footage on a videotape. The container analogy may appropriately apply to a videotape, since its entire "contents" can be revealed by merely playing that videotape and inactively observing its footage run until completion; a searcher need not further manipulate the videotape to observe the entire video footage. Thus, the more-thoroughly-searched principle may reasonably apply to a police viewing all of the video footage of a partially viewed videotape. But there are analytically significant reasons to view thumb drive searches differently.
One thumb drive may store thousands of videos, and it may store vastly more and different types of private information than one videotape. Data stored on a thumb drive may be concealed among an unpredictable number of closed digital file folders, which may be further concealed within unpredictable layers of nested subfolders. A thumb drive search that may require navigating through numerous closed file folders and subfolders is significantly more invasive and complex than a search of viewing one continuous stream of footage on a videotape. Based on a thumb drive's ever-expanding storage capacity, its potential to hold vastly more and distinct types of private information, and the complexity involved in searches of its digital *729 data, we find Robinson and *896 the reasoning underlying our decision in that case simply inapplicable here. Accordingly, we decline to extend its container analogy to an electronic storage device and decline to apply the "opened the container" approach to authorize police to search through all of the digital data it may store.
In reaching this decision, we are guided by the substantial privacy concerns implicated in searches of digital data that the United States Supreme Court expressed in Riley v. California , --- U.S. ----, 134 S.Ct. 2473, 2485, 189 L.Ed. 2d 430 (2014) (declining to extend the search-incident-to-arrest exception to police searches of digital data on cell phones). In Riley , the Court expressly rejected the analogy that a cell phone should be treated like a single container for Fourth Amendment purposes. Id. at 2488-89. In addressing the United States' argument that "a search of all data stored on a cell phone is 'materially indistinguishable' from searches of ... physical items," the Supreme Court stated:
That is like saying a ride on horseback is materially indistinguishable from a flight to the moon. Both are ways of getting from point A to point B, but little else justifies lumping them together. Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse. A conclusion that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but any extension of that reasoning to digital data has to rest on its own bottom.
Id. ; see also id. at 2485 ("A search of the information on a cell phone bears little resemblance to the type of brief physical search considered in [a prior case]."). Since Riley was decided, this Court has relied on its guidance in rejecting the State's argument that a "GPS [device] should be viewed as a type of 'digital container' and treated the same as an address book, a wallet, or a purse" in the search-incident-to-arrest context. See State v. Clyburn , 240 N.C. App. 428, 435, 770 S.E.2d 689, 695 (2015) (holding that a search of the digital contents of a GPS was not a valid search incident to arrest).
While this is a private-search exception case, not a search-incident-to-arrest exception case, Riley 's guidance that the nature of an electronic device greatly increases privacy implications holds just as true, and it guides our decision in how best to apply a doctrine originating from the search of a container limited by physical realities to a search for *897 digital data on an electronic storage device that is not. Cf. United States v. Lichtenberger , 786 F.3d 478, 487 (6th Cir. 2015) (relying on Riley 's guidance in applying the private-search doctrine to a laptop search), aff'g , 19 F.Supp.3d 753 (N.D. Ohio 2014) ; see also United States v. Sparks , 806 F.3d 1323, 1336 (11th Cir. 2015) (relying on Riley 's guidance in applying the private-search doctrine to a cell phone search), cert. denied , Sparks v. United States , --- U.S. ----, 136 S.Ct. 2009, 195 L.Ed.2d 222, and cert. denied , Johnson v. United States , --- U.S. ----, 137 S.Ct. 34, 196 L.Ed.2d 46 (2016).
Accordingly, we decline to extend the container analogy we applied in Robinson to searches of digital data on electronic storage devices. We hold that an electronic storage device should not be viewed as a single container for Fourth Amendment purposes. The trial court therefore erred by concluding that Jones's thumb drive search effectively frustrated defendant's expectation of privacy in the contents of the entire device. We turn now to whether the trial court's findings support its conclusion that Detective Bailey's search remained within the permissible scope of Jones's prior search and whether it was reasonable under the circumstances, and was, therefore, a valid warrantless search under the private-search doctrine.
D. Validity of the Thumb Drive Search Under the Private-Search Doctrine
Defendant challenges the finding that "[i]n addition to the [granddaughter image] Detective Bailey saw photographs of other nude or partially nude prepubescent females posing in sexual positions." (Emphasis added.) He contends this finding necessarily establishes that Detective Bailey's search unconstitutionally exceeded the scope *730 of Jones's prior search because Jones never viewed those images and the granddaughter image was located in a different subfolder. The State contends that even if Detective Bailey's thumb drive search was "more thorough," it was not unconstitutionally excessive in scope under the private-search doctrine, because Detective Bailey had "virtual certainty" what contraband it contained. Because the private-search doctrine originated from an officer's physical search of the contents of a parcel box, which significantly differs from a digital search of data on an electronic storage device, we turn to the material facts of Jacobsen and its application of the private-search doctrine for guidance.
In Jacobsen , a Federal Express (FedEx) employee opened a damaged parcel package, a paper-wrapped cardboard box, which revealed that it contained crumpled newspaper covering a closed tube made of duct tape. 466 U.S. at 111, 104 S.Ct. at 1655. FedEx employees removed *898 the tube, cut it open, and discovered it contained zip-lock bags of white powder. Id. They summoned authorities to review the contents of the box, and replaced the plastic bags into the tube, and the tube and newspapers back into the box. Id. The responding Drug Enforcement Administration (DEA) agent saw that the repackaged box had a hole punched in its side and its top was open. Id. He removed the tube from the box, saw that one end of it had been slit open, removed the plastic bags from the tube, and then saw the white powder. Id. He then removed a trace of the white powder and conducted a field test confirming it was cocaine. Id. at 111-12, 104 S.Ct. at 1655.
The Court in Jacobsen addressed whether the DEA agent's warrantless search was valid under the Fourth Amendment. After articulating the private-search-doctrine standard, the Court began applying that doctrine by defining the scope of the FedEx employees' initial private search and then testing it against the DEA agent's subsequent one, in order to determine the extent to which the DEA agent's search invaded additional privacy interests and thus exceeded the scope of the FedEx employees' search. Id. at 118-20, 122, 104 S.Ct. at 1659-60, 1661. The Court explained that the FedEx employees' initial search, and the resulting invasions of privacy, "revealed that the package contained only one significant item, a suspicious looking tape tube[,]" and that "[c]utting the end of the tube and extracting its contents revealed a suspicious looking plastic bag of white powder." Id. at 115, 104 S.Ct. at 1657. Thus, the Court determined that the DEA agent's actions of removing the tube from the box, removing the plastic bags from the tube, and observing the white powder did not exceed the scope of the prior search, since "the removal of the plastic bags from the tube and the agent's visual inspection of their contents enabled the agent to learn nothing that had not previously been learned during the private search." Id. at 120, 104 S.Ct. at 1660 (footnote omitted). Thus, "[i]t infringed no legitimate expectation of privacy and hence was not a 'search' within the meaning of the Fourth Amendment." Id.
In analyzing the reasonableness of the DEA's warrantless search in light of what he knew from the FedEx employees' prior search, the Court explained that "[w]hen the first [DEA] agent on the scene initially saw the package, he knew it contained nothing of significance except a tube containing plastic bags and, ultimately, white powder." Id. at 118, 104 S.Ct. at 1659. The Court further determined that "[e]ven if the powder was not itself in 'plain view' because it was still enclosed in so many containers and covered with papers," the DEA agent was authorized to search the contents of the box because "there was a virtual certainty *899 that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell [the DEA agent] anything more than he had already been told ." Id. at 119-20, 104 S.Ct. at 1659 (emphasis added).
Accordingly, under Jacobsen 's beyond-the-scope test, judicial review centers on defining the precise scopes of both searches in order to determine whether a follow-up police search further invaded privacy interests and thus exceeded the scope of the prior private search. Further, under Jacobsen 's virtual-certainty requirement, where a private search does not leave incriminating evidence in plain view, judicial review of the reasonableness *731 of a follow-up police search must be tested by the degree to which that officer had "virtual certainty" the privately searched item contained "nothing else of significance" other than the now non-private information, and that his inspection of that item "would not tell him anything more than" what the private searcher already told him.
Here, the trial court's only factual findings concerning the scope of both searches established the following:
3. ... [Jones] inserted the purple flash drive into a shared Apple computer and discovered, among other visual representations, a picture of her granddaughter , ... who appeared to be asleep and who was nude from the waist up with breasts displayed. ...
....
6. Following his discussion with ... [Jones], Detective Bailey went to the CSI Unit to confirm on the purple flash drive what he had been told by [Jones]. ... The CSI technician placed the purple flash drive into CSI's computer and selected the folder that had been identified by [Jones] as containing the ... granddaughter [image]. This viewing in the CSI Unit confirmed what ... [Jones] had told Detective Bailey that she had discovered on the flash drive. In addition to the [granddaughter image] Detective Bailey saw photographs of other nude or partially nude prepubescent females posing in sexual positions .
(Emphasis added.) Based on these findings, the trial court determined that "Detective Bailey's initial search and examination of the purple thumb drive in the CSI Unit did not exceed the scope of the private, prior search done by [Jones], but could have been more thorough."
*900 Jacobsen instructs that "[t]he additional invasions of respondents' privacy by the Government agent must be tested by the degree to which they exceeded the scope of the private search." 466 U.S. at 115, 104 S.Ct. 1652. Thus, the trial court should have made detailed findings on the exact scope of both Jones's and Detective Bailey's searches of the thumb drive's contents, in order to determine precisely the extent to which Detective Bailey's search may have exceeded Jones's earlier one. However, the State never presented any evidence, see State v. Romano , 369 N.C. 678, 800 S.E.2d 644, 654 (2017) (placing the burden on the State to prove there was no state action when a nurse drew the defendant's blood, or "that the seizure of the blood was not an act of the State and thus, was not subject to the Fourth Amendment's search and seizure analysis"), and the trial court never made any findings establishing exactly what folder(s) and/or subfolder(s) Jones or Detective Bailey searched. Nor did the trial court's findings describe what "other visual representations" Jones viewed, or whether Detective Bailey only viewed those particular images.
Although the trial court found that Detective Bailey viewed images in a folder Jones identified as containing the granddaughter image, it did not explore whether the images of partially or fully nude minors Detective Bailey allegedly viewed were located in another subfolder of images other than that which Jones searched. To the extent that they were, those images were not admissible under the private-search doctrine. Cf. United States v. Kinney , 953 F.2d 863, 866 (4th Cir. 1992) (holding drug evidence found during a follow-up police search of a closet inadmissible where the private search revealed only guns: "This phase of the search cannot be supported by Akers' prior private search because the fruits of [the officer's] search, the white powder and drug paraphernalia, were never discovered by Akers.").
Ordinarily, " 'when the trial court fails to make findings of fact sufficient to allow the reviewing court to apply the correct legal standard, it is necessary to remand the case to the trial court.' " State v. Ingram , 242 N.C. App. 173, 180, 774 S.E.2d 433, 440 (2015), disc. rev. denied, writ denied , 369 N.C. 195, 793 S.E.2d 247 (2016) (quoting State v. Salinas , 366 N.C. 119, 124, 729 S.E.2d 63, 67 (2012) ). "In such a situation, remand is necessary because it is the trial court that 'is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred.'
*732 " Ingram , 242 N.C. App. at 180, 774 S.E.2d at 440 (quoting Salinas , 366 N.C. at 124, 729 S.E.2d at 67 ). However, remand is not *901 required where "there are no material conflicts in the evidence" and "the superior court's order ... contain[s] sufficient findings of fact to which this Court can apply the [applicable legal] standard." Salinas , 366 N.C. at 124, 729 S.E.2d at 67 ; see also Ladd , 246 N.C. App. at 303-05, 782 S.E.2d at 403-04 (declining to remand for additional findings where there was no "conflicting evidence for the trial court to adjudicate" and the facts were "sufficient for our de novo review of the trial court's conclusions").
After carefully considering the suppression hearing evidence, we conclude that there were no material evidentiary conflicts and that the trial court's findings are sufficient for our de novo review of its ultimate conclusion that Detective Bailey's warrantless search did not violate defendant's Fourth Amendment rights. We conclude that findings on the precise scope of both searches are immaterial in this particular case, in light of the other findings establishing that Jacobsen 's virtual-certainty requirement was not satisfied and, therefore, Detective Bailey's search was unauthorized under the private-search doctrine. Cf. Lichtenberger , 786 F.3d at 490 (concluding that an officer's lack of "virtual certainty" he viewed the same child pornography images a private searcher viewed on the defendant's laptop dispositively established that his search was unconstitutional under the private-search doctrine).
Jacobsen further instructs that because Jones's prior search did not leave incriminating evidence in plain view, judicial review centers on whether Detective Bailey had "virtual certainty that nothing else of significance [except for the granddaughter image that Jones revealed to him] was in the [thumb drive] and that a[n] ... inspection of the [thumb drive] and its [digital data] would not tell him anything more than he already had been told." 466 U.S. at 119, 104 S.Ct. 1652 ; see also id. at 120 n.17, 104 S.Ct. at 1660 n.17 (noting the "significant ... facts " that "the container could no longer support any expectation of privacy" and "it was virtually certain that it contained nothing but contraband " (emphasis added)). This virtual-certainty requirement limits unfettered governmental searching through all of the digital data stored on an electronic storage device that is not known to contain only contraband.
Here, neither the State's evidence, nor the trial court's findings, established that Detective Bailey proceeded with any certainty, much less the virtual certainty required, that the thumb drive contained only the potential contraband that Jones had reported, nor that Detective Bailey's inspection of its contents would not reveal anything more than what Jones had told him. Rather, the findings establish that the only defining characteristic of the thumb drive was its purple color, which reveals nothing about the nature of its digital contents, and that *902 Detective Bailey knew the thumb drive contained "other visual representations" in addition to the one granddaughter image that was not obviously child pornography. According to Jones, those other representations were images of fully clothed adult women and children; defendant's housekeeper; and defendant's childhood friend as an adult, posing clothed and partially clothed. The trial court's findings establish that Detective Bailey did not search the thumb drive with the same level of "virtual certainty" contemplated by Jacobsen that the thumb drive only contained child pornography contraband, or that his inspection of its digital contents would not reveal private information that Jones had not already revealed to him.
In urging us to reach a different result, the State cites to our decision in Robinson and two other federal circuit courts of appeal cases to support its position that Detective Bailey's search did not materially exceed the scope of Jones's prior one because he merely examined the thumb drive more thoroughly. Those cases are distinguishable because the officers in those cases could be virtually certain the devices contained contraband.
In Robinson , based on the now non-private information revealed by the private searcher that portions of the videotape showed the defendant engaging in sexual activity with two minors, see id. at 796, 653 S.E.2d at 891, the officer could have virtual certainty the videotape contained only contraband and that *733 his viewing of the entire footage would not reveal anything further. Here, contrarily, the only now nonprivate information Jones's search revealed was that the thumb drive contained, among several other images, only one potential contraband image, which was not obviously child pornography. The evidence showed that the thumb drive contained various folders and subfolders storing different types of private digital data and that the granddaughter image was stored in one subfolder among numerous other non-incriminating images. Unlike the officer in Robinson , Detective Bailey did not have the same sort of certainty that the thumb drive only contained contraband, or that his search would not reveal anything more than what Jones had reported. The State's other authority is similarly distinguishable. See Runyan , 275 F.3d at 464 (holding that police did not exceed the scope of a private search by examining more files on partially searched computer disks that a private searcher revealed contained child pornography); Rann , 689 F.3d at 836-37 (holding that police did not exceed the scope of a private search by examining more images on a memory card and zip drive that the police "could be substantially certain" contained child pornography based on the private searchers' reports). *903 Moreover, while the private-search doctrine "does not prohibit governmental use of ... now nonprivate information[,]" it prohibits "use [of] information with respect to which the expectation of privacy has not already been frustrated." Jacobsen , 466 U.S. at 117, 104 S.Ct. at 1658-59. The trial court's findings establish that the only "now non-private information" Jones's search revealed was that the thumb drive contained only one potentially incriminating image of her granddaughter sleeping without a shirt. Because Jones's search never revealed that the thumb drive contained child pornography images, the private-search doctrine alone could not have authorized Detective Bailey to use that information for his warrant application.
Under the Fourth Amendment's reasonableness inquiry, " '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " State v. Grice , 367 N.C. 753, 762, 767 S.E.2d 312, 319 (2015) (quoting Jacobsen , 466 U.S. at 125, 104 S.Ct. at 1662 (alteration in original) (citation omitted)). The suppression evidence showed that Detective Bailey's search involved opening multiple closed folders and subfolders and scrolling through various non-incriminating files in search of one potential contraband image that was not obviously child pornography or overtly sexual in nature. The governmental interest alleged to justify the private-search exception to the warrant requirement was that of "merely avoiding the risk of a flaw in the [private searcher's] recollection," Jacobsen , 466 U.S. at 119, 104 S.Ct. at 1659, which carries little weight when balanced against the immense privacy interests at stake in the thumb drive search here, see Riley , 134 S.Ct. at 2488-91. Further, no risks supported an immediate search based on evidence preservation; the thumb drive was stored in an evidence locker. And thumb drives present no cognizable harm to police. Id. at 2485 ("Digital data stored on a cell phone cannot itself be used as a weapon. ...").
"[T]he 'prime purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.' " United States v. Janis , 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed. 2d 1046 (1976) (citation omitted). "A ruling admitting evidence in a criminal trial ... has the necessary effect of legitimizing the conduct which produced the evidence, while an application of the exclusionary rule withholds the constitutional imprimatur." Terry v. Ohio , 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed. 2d 889 (1968). To hold that the evidence discovered during Detective Bailey's warrantless thumb drive search was admissible under the private-search doctrine may authorize unfettered police searching through all *904 of the digital data on an even more sophisticated electronic device that may contain greater quantities of distinct items of private information based merely on a private searcher viewing and revealing to police only one potentially incriminating file on that device. We therefore hold this evidence was inadmissible under the private-search doctrine and that Detective *734 Bailey was prohibited from using it to support his warrant application.
In summary, although the trial court failed to make adequate factual findings concerning the exact scope of Jones's and Detective Bailey's searches through the thumb drive, its findings establish that Detective Bailey did not conduct his search with the requisite level of "virtual certainty" that the thumb drive contained only contraband or that his inspection of its contents would not reveal anything more than he already learned from Jones. Therefore, neither was Detective Bailey's warrantless thumb drive search authorized under the private-search doctrine, nor was he able to use the evidence he obtained during that search to support his warrant application. We thus hold that the trial court erred by concluding that Detective Bailey's warrantless search did not violate defendant's Fourth Amendment rights.
E. Probable Cause to Issue the Search Warrant
Defendant next argues that without the illegally acquired information from Detective Bailey's search-that the thumb drive contained other images of minors posing in sexual positions-his warrant application failed to establish probable cause to issue the search warrant executed on the thumb drive that yielded the twelve incriminating images underlying his second- and third-degree sexual exploitation of a minor convictions. The State does not address the merits of this argument but contends that, because the evidence obtained during Detective Bailey's warrantless search was lawfully acquired pursuant to the private-search doctrine, the search warrant issued was valid.
"The ultimate inquiry on a motion to suppress evidence seized pursuant to a warrant is not whether the underlying affidavit contained allegations based on illegally obtained evidence, but whether, putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause."
State v. McKinney , 361 N.C. 53, 59, 637 S.E.2d 868, 872 (2006) (emphasis omitted) (quoting United States v. Giordano, 416 U.S. 505, 554-55, 94 S.Ct. 1820, 40 L.Ed. 2d 341 (1974) (Powell, J., concurring in part, dissenting in part) (citation omitted)). If excising illegally obtained information *905 from a warrant application would fail to supply probable cause to issue the search warrant, all evidence obtained from its execution must be suppressed as tainted fruit. See, e.g. , McKinney , 361 N.C. at 58, 637 S.E.2d at 872 (citations omitted).
"The 'common-sense, practical question' of whether probable cause exists must be determined by applying a 'totality of the circumstances' test." State v. Benters , 367 N.C. 660, 664, 766 S.E.2d 593, 597-98 (2014) (quoting Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed. 2d 527, 543 (1983), and citing State v. Arrington , 311 N.C. 633, 637, 641, 319 S.E.2d 254, 257 (1984) ). Thus,
"[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed."
Id. at 664, 766 S.E.2d at 597-98 (emphasis added) (quoting Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332, 76 L.Ed. 2d at 548 (third and fourth alterations in original), as quoted in State v. Arrington , 311 N.C. 633, 638, 319 S.E.2d 254, 257-58 (1984) ).
Striking the information Detective Bailey acquired during his warrantless search-that the thumb drive contained "several fully nude photographs of an unknown child standing beside and [sic] adult female in various sexual positions"-all that remained to provide a "fair probability that contraband" would be found in the thumb drive, other than Jones's allegations concerning two incidents involving defendant in 2001, is Detective Bailey's allegation that Jones reported the thumb drive "contained pictures of [defendant] and other women engaged in sexual activities"; "pictures of them in her home[ ]";
*735 and "pictures of her 9 year old granddaughter ... in bed[,]" where she "appeared to be sleeping and she was exposed (Nude) from the waist up."
However, as defendant concedes, because the trial court determined that the evidence acquired by Detective Bailey's warrantless search was lawful under the private-search doctrine, the trial court never determined whether striking that information from his application would still supply probable cause to issue the search warrant. Further, the trial court's order contains no findings on the issue of whether it would have *906 found the evidence seized pursuant to the warrant admissible absent the tainted allegations acquired by Detective Bailey's unlawful thumb drive search. In such a situation, our Supreme Court has instructed that "remand to the trial court [is] more appropriate than unilateral appellate court determination of the warrant's validity[.]" McKinney , 361 N.C. at 64, 637 S.E.2d at 875 (citation omitted).
In McKinney , our Supreme Court was presented with an issue of whether omitting unlawfully obtained information from a search warrant application would have still supplied probable cause to issue the warrant. However, because the trial court's order "contained limited findings of fact," none of which "indicate[d] whether the trial court would have found the evidence seized pursuant to the warrant admissible even if the tainted evidence had been excised from the warrant application," id. at 63, 637 S.E.2d at 875, the Court determined that "the record ... [did] not reveal the extent to which consideration of the illegally obtained information affected the trial court's determination that the evidence seized pursuant to the warrant should not be suppressed," id. Accordingly, the Court "decline[d] to speculate as to the probable outcome ... had the trial court analyzed the validity of the search warrant based only on the legally obtained information on the warrant" and instead "afford[ed] the trial court an opportunity to evaluate the validity of the warrant" in the first instance. Id. at 65, 637 S.E.2d at 876.
Accordingly, under McKinney , we reverse the trial court's ruling on defendant's suppression motion and remand this matter to the trial court to determine, in the first instance, whether probable cause existed to issue the search warrant after excising from Detective Bailey's warrant application the tainted evidence arising from his unlawful search.
V. Conclusion
This case presents a novel issue for this Court of how to apply the private-search doctrine to an after-occurring police search for potential digital contraband on a privately searched electronic storage device. Guided by the Riley Court's emphasis on the tremendous privacy interests implicated in searches of digital data on a cell phone, and its express rejection of the analogy that a cell phone should be viewed as a single container in search-incident-to-arrest cases, as well as this Court's prior ruling in Ladd , we conclude that the "closed-container" approach we applied to the videotape search in Robinson should not be extended to searches for digital data on an electronic storage device. Accordingly, we hold that the trial court erred by concluding Jones's prior viewing of the thumb drive effectively frustrated defendant's expectation of privacy in its entire contents.
*907 Additionally, while the trial court's findings did not adequately address the scope of both searches in order precisely to determine the extent to which Detective Bailey's search may have exceeded the scope of Jones's earlier one, we decline to remand the matter for more detailed findings. We conclude that such findings would be immaterial in light of the other findings establishing that Detective Bailey's search was not authorized under the private-search doctrine because he did not conduct his search with the requisite level of "virtual certainty" contemplated by Jacobsen . Since the additional information Detective Bailey acquired during his warrantless search was never revealed to him by Jones, the private-search doctrine did not permit him to use that information to support the warrant application. Accordingly, we hold the trial court erred by concluding the private-search doctrine authorized Detective Bailey's warrantless thumb drive search and, therefore, *736 did not violate defendant's Fourth Amendment rights.
However, because the record "did not reveal the extent to which consideration of the illegally obtained information affected the trial court's determination that the evidence seized pursuant to the warrant should not be suppressed," McKinney , 361 N.C. at 63, 637 S.E.2d at 875, we reverse the ruling on defendant's suppression motion and remand this matter to the trial court with instructions to determine whether excising the evidence acquired during Detective Bailey's unlawful warrantless search would have supplied probable cause to issue the search warrant to forensically examine the thumb drive.
REVERSED IN PART AND REMANDED.
Judge TYSON concurs.
Judge STROUD concurs in part and dissents in part by separate opinion.

Pseudonyms are used to protect identities.