EARLS, Justice.
**658 Here we are asked to decide whether a law enforcement officer's warrantless search of defendant's USB drive, following a prior search of the USB drive by a private individual, was permissible under the "private-search doctrine." The Court of Appeals concluded that the warrantless search violated defendant's Fourth Amendment rights and remanded to the trial court for a determination of whether there was probable cause for the issuance of a search warrant without the evidence obtained from the unlawful search. State v. Terrell , --- N.C. App. ----, 810 S.E.2d 719 (2018). We affirm.
Background
In February 2013, defendant, James H. Terrell, Jr., returned from overseas work as a contractor in the Philippines and resumed living with his long-time girlfriend, Jessica Jones, in her home.[1] Defendant and Ms. Jones had been in a relationship for over ten years and had two children together. Ms. Jones also had an older daughter from an earlier relationship, Cindy, who had a daughter, Sandy.
On 13 January 2014, while defendant was at work, Ms. Jones began searching for a photograph of defendant's housekeeper in the Philippines in order "to put a face to the person[ ]" of whom defendant had spoken. Ms. Jones located and opened defendant's briefcase, in which she found paperwork and three USB "thumb drives," one of which was purple. After plugging the purple USB thumb drive (the thumb drive) into a shared computer, Ms. Jones "opened it" and began clicking through "folders and sub-folders." Ms. Jones later stated at the suppression hearing that she observed "images of adult women and ... children" that "were not inappropriate," images of the housekeeper in the Philippines, and images of a "childhood friend" of defendant's. Ms. Jones testified: "I honestly do not recall any images of [defendant] and I. And in those pictures there are no images of him. There are just pictures of women and the young ladies I just spoke of." According to Ms. Jones, "the pictures were all in one folder and then the other folders were like movies because [defendant] likes military movies," and she did not "think the **659 folders had a title. It was just a thumb -- it's the title of the thumbdrive, purple rain." As Ms. Jones "got past" the images of defendant's childhood friend, she saw an image of her granddaughter, Sandy, who was nine years old at the time, sleeping in a bed "and ... exposed from the waist up." Upon seeing the image of Sandy, Ms. Jones became upset and ceased her search of the thumb drive.
That evening, after Ms. Jones had spoken with her daughter, Cindy, and "let[ ] her know what [she] had discovered," together they took the thumb drive to the Onslow County Sheriff's Department. Ms. Jones and *19 Cindy met with Detective Lucinda Hernandez, reported what Ms. Jones had discovered on the thumb drive, and left the thumb drive with Detective Hernandez. Detective Hernandez "did not view the purple flash drive," but "accepted [it] and logged it into the Crime Scene Investigation (CSI) Unit of the Onslow County Sheriff's Department."
On the following day, Ms. Jones and Cindy met with Detective Eric Bailey at the Sheriff's Department and explained what they had discovered on the thumb drive. After meeting with Ms. Jones and Cindy, Detective Bailey "went down to the CSI department ... to verify the information." Detective Bailey, with the assistance of a member of the CSI Unit, plugged in the thumb drive and went "through checking it to try to find the image that [Ms. Jones] stated that was on there"-"a nude or partially nude photograph of her granddaughter." Detective Bailey stated: "As I was scrolling through, of course, there was a lot of photos in there so I'm clicking trying to find exactly where this image is located at. I observed several -- multiple images of adult females and also [defendant] together clothed, nude, partially nude." As he was trying to locate the image of Sandy, Detective Bailey discovered what he believed might be child pornography; specifically, he "observed other young females, prepubescent females, unclothed, also some that were clothed." Eventually, Detective Bailey "[s]tarted to observe other photographs of women overseas, and then finally happened upon the photograph with the granddaughter." At that point, Detective Bailey ceased his search of the thumb drive and left it with the CSI Unit.
Detective Bailey applied for a search warrant on 5 February 2014 to search the thumb drive and other property of defendant "for contraband images of child pornography and evidence of additional victims and crimes committed in this case." In his affidavit attached to this initial search warrant application, Bailey did not state that he had already searched the thumb drive or include any information he obtained from that search. Bailey instead relied on information from Ms. Jones, including her allegation that she had discovered the image of Sandy on **660 defendant's thumb drive, as well as allegations that Ms. Jones's other daughter had at some point previously told Ms. Jones that defendant "touched me down there" and that later a floppy disk containing child pornography had been discovered in defendant's truck. A magistrate issued the warrant but, according to Bailey, he had to apply for another search warrant because he "received a call from the [State Bureau of Investigation] stating that they wanted additional information on the search warrant." Accordingly, Detective Bailey applied for another search warrant on 5 May 2014, which was issued by a magistrate on the same day. In the affidavit supporting this second warrant application, Bailey included information from his search of the thumb drive, stating that he saw "several partially nude photographs of" Sandy and "severally fully nude photographs of an unknown child standing beside and [sic] adult female in various sexual positions."
Pursuant to the second warrant, an SBI agent conducted a thorough "forensic examination" of the thumb drive, which was titled "purple rain" and contained various folders and subfolders. The SBI agent discovered the image of Sandy in a folder named "red bone" and he uncovered twelve additional incriminating images located in a different folder named "Cabaniia." Ten of those twelve images had been deleted and archived and would not have been ordinarily viewable without a "forensic tool." Defendant was indicted for four counts of second-degree sexual exploitation of a minor, one count of possessing a photographic image from peeping, and twelve counts of third-degree sexual exploitation of a minor.
Defendant filed a pretrial motion to suppress "any and all evidence obtained as a result of" Detective Bailey's search of his thumb drive, arguing that Bailey "conducted a warrantless search of property in which the Defendant had a ligitimate [sic] expectation of privacy," that the 5 May 2014 search warrant was based on evidence unlawfully obtained from that search, and that in the absence of that tainted evidence the search warrant was unsupported by probable cause. At the suppression hearing, after receiving testimony from Ms. Jones and Detective Bailey *20 and considering the arguments of the parties, the trial court orally denied defendant's motion. In a written order dated on 29 November 2016, the trial court found, in pertinent part:
2. ... [Ms. Jones's] stated purpose for looking in defendant's briefcase was to put a face to someone that defendant had talked about. Ms. [Jones's] entry into defendant's briefcase and the contents therein were **661 solely at her own volition and not connected with or at the suggestion of any law enforcement person or organization.
3. [Ms. Jones] inserted the purple flash drive into a shared Apple computer and discovered, among other visual representations, a picture of her granddaughter, [Sandy], who appeared to be asleep and who was nude from the waist up with breasts displayed. After consulting with her daughter, the mother of [Sandy], Ms. [Jones] and her daughter, on January 13, 2014, took the purple flash drive to the Onslow County Sheriff's Department.
....
5. On January 14, 2014, [Ms. Jones] again appeared at the Onslow County Sheriff's Department to meet with Detective Eric Bailey concerning the purple flash drive and the contents that she had seen on that flash drive. Detective Bailey discussed with Ms. [Jones] the visual representations she had discovered on the purple flash drive.
6. Following his discussion with [Ms. Jones], Detective Bailey went to the CSI Unit to confirm on the purple flash drive what he had been told by [Ms. Jones]. ... The CSI technician placed the purple flash drive into CSI's computer and selected the folder that had been identified by [Ms. Jones] as containing the picture of her granddaughter [Sandy]. This viewing in the CSI Unit confirmed what [Ms. Jones] had told Detective Bailey that she had discovered on the flash drive. In addition to the picture of [Sandy] Detective Bailey saw photographs of other nude or partially nude prepubescent females posing in sexual positions.
7. The images observed by Detective Bailey corroborated the information provided to him by [Ms. Jones]. Based upon that corroboration and [Ms. Jones's] statements, Detective Bailey then obtained a search warrant in order to conduct a complete and thorough forensic examination of the purple flash drive.
8. Detective Bailey's initial search and examination of the purple flash drive in the CSI Unit did not exceed **662 the scope of the private, prior search done by [Ms. Jones], but could have been more thorough.
Based on these findings, the trial court concluded, in relevant part:
2. [Ms. Jones's] viewing of the purple flash drive did not violate the Fourth Amendment because she was a private party not acting under the authority of the State of North Carolina. Her viewing of the purple flash drive effectively frustrated Defendant's expectation of privacy as to the contents of the purple flash drive, and thus the later viewing by Detective Bailey at her request and upon presentation of the flash drive to [law enforcement] did not violate Defendant's rights under the Fourth Amendment.
3. None of the Defendant's rights under the Constitution or laws of the United States of America or of the Constitution or laws of the State of North Carolina were violated during the seizure and search of the purple flash drive in this case.
Accordingly, the trial court denied defendant's motion to suppress.
At trial, at the close of all evidence, the State elected not to proceed on three charges of second-degree sexual exploitation of a minor and dismissed those counts. The jury convicted defendant of the remaining fourteen counts and the trial court sentenced him to twelve consecutive terms of five to fifteen months each, plus a concurrent term of twenty to eighty-four months for the second-degree *21 sexual exploitation charge. The court imposed a suspended sentence for the secret peeping conviction. Defendant appealed the trial court's denial of his motion to suppress.
At the Court of Appeals, defendant first argued that the trial court erred in concluding that Jones's viewing of the thumb drive effectively frustrated his expectation of privacy in the device's entire contents, thereby permitting Detective Bailey to subsequently conduct a warrantless search of all the thumb drive's digital data. State v. Terrell , 810 S.E.2d at 727. The Court of Appeals majority agreed, noting that North Carolina courts had not previously considered the "private-search doctrine" in the context of electronic storage devices. Id. at 728 ; see also id. at 727 (explaining that under the "private-search doctrine," "[o]nce an individual's privacy interest in particular information has been frustrated by a private actor, who then reveals that information to police, **663 the police may use that information, even if obtained without a warrant" (citing United States v. Jacobsen , 466 U.S. 109, 117, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) )).
The majority distinguished the Court of Appeals' prior decision in State v. Robinson , in which the court concluded that police could permissibly view an entire videotape after a private searcher viewed only portions of that videotape because "the police do not exceed the scope of a prior private search when they examine the same materials ... [ ] more thoroughly than did the private parties." Id. at 728 (first alteration in original) (quoting State v. Robinson , 187 N.C. App. 795, 798, 653 S.E.2d 889, 892 (2007) ). The majority rejected the State's contention that the thumb drive was a similar "container" that, once opened, frustrated any expectation of privacy in the device's entire contents. Id. at 728-29. According to the majority, "electronic storage devices are unlike videotapes, and a search of digital data on a thumb drive is unlike viewing one continuous stream of video footage on a videotape. ... One thumb drive may store thousands of videos, and it may store vastly more and different types of private information than one videotape." Id. at 728. In reaching this conclusion, the majority noted that it was "guided by the substantial privacy concerns implicated in searches of digital data that the United States Supreme Court expressed in Riley v. California ." Id. at 729 (citing Riley , 573 U.S. 373, 134 S. Ct. 2473, 2485, 189 L.Ed.2d 430 (2014) ).
Turning to the search at issue, the majority stated that under the private-search doctrine as set forth in United States v. Jacobsen , "a follow-up police search must be tested by the degree to which that officer had 'virtual certainty' the privately searched item contained 'nothing else of significance' other than the now non-private information, and that his inspection of that item 'would not tell him anything more than' what the private searcher already told him." Id. at 731 (quoting Jacobsen , 466 U.S. at 119, 104 S.Ct. 1652 ). The majority concluded that while "the trial court should have made detailed findings on the exact scope of both Jones's and Detective Bailey's searches of the thumb drive's contents," the "findings on the precise scope of both searches are immaterial in this particular case, in light of the other findings establishing that Jacobsen 's virtual-certainty requirement was not satisfied and, therefore, Detective Bailey's search was unauthorized under the private-search doctrine." Id. at 731-32 (citation omitted). Accordingly, the majority held that "Detective Bailey's warrantless thumb drive search [was not] authorized under the private-search doctrine, nor was he able to use the evidence he obtained during that search to support his warrant application." Id. at 734.
Next, defendant argued that without the information Detective Bailey acquired from the warrantless search, the warrant application **664 failed to establish probable cause. Id. at 734. The majority noted that "because the trial court determined that the evidence acquired by Detective Bailey's warrantless search was lawful under the private-search doctrine, the trial court never determined whether striking that information from his application would still supply probable cause to issue the search warrant." Id. at 735. The majority determined that under State v. McKinney , "remand to the trial court [is] more appropriate than unilateral appellate court determination of the warrant's validity[.]" *22 Id. at 735 (alterations in original) (quoting McKinney , 361 N.C. 53, 64, 637 S.E.2d 868, 875 (2006) ). Accordingly, the majority reversed the trial court's denial of defendant's motion to suppress and remanded "to the trial court to determine, in the first instance, whether probable cause existed to issue the search warrant after excising from Detective Bailey's warrant application the tainted evidence arising from his unlawful search." Id. at 735.
In a separate opinion, one member of the panel dissented in part. Id. at 736 (Stroud, J., concurring in part and dissenting in part). The dissenting judge "generally agree[d] with the majority's analysis of the private search doctrine and determination that a thumb drive is not a single container" but opined that "the majority's analysis overlooks the fact that Detective Bailey attempted to limit his initial search to find the image reported by Ms. Jones." Id. at 738. According to the dissenting judge, "Detective Bailey was 'substantially certain' the drive would contain the 'granddaughter image,' " and he "sought to replicate Ms. Jones's private search but since she did not understand the organization of the drive, he could not go directly to the particular image he was seeking." Id. at 739-40. The dissenting judge would have found no error in the convictions stemming from "[t]he granddaughter image and two seen photos Detective Bailey found while searching for the granddaughter image" because they "fall within the scope of the private search doctrine, and they too were properly not suppressed by the trial court." Id. at 740. Additionally, the dissenting judge determined that "the granddaughter image and the two seen images would support probable cause for the other ten deleted images" but "concur[red] with the majority to remand to the trial court to determine probable cause for issuance of the search warrant for the ten deleted images." Id. at 740.
The State appealed on the basis of the dissent pursuant to N.C.G.S. § 7A-30(2). The State also filed a petition for discretionary review of additional issues on 13 March 2018, which we allowed in part on 20 September 2018.
**665 Standard of Review
We review a trial court's ruling on a motion to suppress to determine "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." State v. Biber , 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing State v. Brooks , 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994) ). We review the trial court's conclusions of law de novo. Id. at 168, 712 S.E.2d at 878 (citing State v. McCollum , 334 N.C. 208, 237, 433 S.E.2d 144, 160 (1993), cert. denied , 512 U.S. 1254, 114 S.Ct. 2784, 129 L.Ed.2d 895 (1994), convictions vacated and case dismissed with prejudice , State v. McCollum , No. 83CRS15506-07, 2014 WL 4345428 (N.C. Super. Ct. Robeson County, Sept. 2, 2014) ). We review decisions of the Court of Appeals for errors of law. State v. Romano , 369 N.C. 678, 685, 800 S.E.2d 644, 649 (2017) (citing Brooks , 337 N.C. at 149, 446 S.E.2d at 590 ).
Analysis
The State argues that the Court of Appeals, in concluding that Detective Bailey's search of the thumb drive constituted an unreasonable search under the Fourth Amendment, erred by applying an unnecessarily restrictive rule that is inconsistent with the private-search doctrine as set forth in Jacobsen . We disagree.
"The United States and North Carolina Constitutions both protect against unreasonable searches and seizures of private property." State v. Lowe , 369 N.C. 360, 364, 794 S.E.2d 282, 285 (2016) (first citing U.S. Const. amend. IV ; and then citing N.C. Const. art. I, § 20 ). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." Jacobsen , 466 U.S. at 113, 104 S.Ct. 1652. Because the Fourth Amendment "proscrib[es] only governmental action[,] it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' " Id. (quoting Walter v. United States , 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)). Searches *23 conducted by governmental officials in the absence of a judicial warrant "are presumptively unreasonable, though the Court has recognized a few limited exceptions to this general rule." United States v. Karo , 468 U.S. 705, 717, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (citations omitted). When seeking "to admit evidence discovered by way of a warrantless search in a criminal prosecution," the State bears the burden of establishing that the search falls under an exception to the warrant requirement. State v. Cooke , 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982) (first citing Chimel v. California , 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ; and then citing **666 United States v. Jeffers , 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951) ). The Supreme Court set forth one such exception in Jacobsen involving circumstances in which a warrantless search by government officials may be permissible when conducted in reliance upon an antecedent search by a private individual.
In Jacobsen employees at an airport FedEx office opened a damaged package-"an ordinary cardboard box wrapped in brown paper"-to examine the package's contents in compliance with a company policy concerning insurance claims. 466 U.S. at 111, 104 S.Ct. 1652. Inside the box employees found "five or six pieces of crumpled newspaper" covering a tube, which was "about 10 inches long" and made of duct tape. Id. After cutting open the tube, the employees discovered "a series of four zip-lock plastic bags, the outermost enclosing the other three and the innermost containing about six and a half ounces of white powder." Id. Upon finding the white powder, the employees notified the Drug Enforcement Administration (DEA), replaced the plastic bags in the tube, and placed the tube and newspapers back into the box. Id. The first DEA agent who arrived "saw that one end of the tube had been slit open; he removed the four plastic bags from the tube and saw the white powder." Id. He proceeded to open the series of plastic bags and, using a knife blade, "removed a trace of the white substance," which "[a] field test made on the spot identified ... as cocaine." Id. at 111-12, 104 S.Ct. 1652. DEA agents then obtained a warrant to search the location to which the package was addressed and ultimately arrested the recipients. Id. at 112, 104 S.Ct. 1652. The Supreme Court granted certiorari to address the recipients' arguments "that the warrant was the product of an illegal search and seizure." Id. at 112-13, 104 S.Ct. 1652.
The Court noted that "[t]he reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred." Id. at 115, 104 S.Ct. 1652. Central to that inquiry in Jacobsen , the Court noted, were "[t]he initial invasions of respondents' package," which "did not violate the Fourth Amendment because of their private character." Id. The Court stated, "The additional invasions of respondents' privacy by the Government agent must be tested by the degree to which they exceeded the scope of the private search." Id. According to the Court, "[t]his standard follows from the analysis applicable when private parties reveal other kinds of private information to the authorities," specifically-"[o]nce frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now nonprivate information." Id. at 117, 104 S.Ct. 1652. Rather, "[t]he Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated," in which case "the authorities have **667 not relied on what is in effect a private search, and therefore presumptively violate the Fourth Amendment if they act without a warrant." Id. at 117-18, 104 S.Ct. 1652.
In Jacobsen , the federal agent who first arrived at the scene knew when he saw the package that "it contained nothing of significance" other than a tube with "plastic bags and, ultimately, white powder." Id. at 118, 104 S.Ct. 1652. According to the Court:
[T]here was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell him anything more than he already had been told. ... Respondents could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined *24 the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents.
Id. at 119, 104 S.Ct. 1652. "Similarly," the Court continued, "the removal of the plastic bags from the tube and the agent's visual inspection of their contents enabled the agent to learn nothing that had not previously been learned during the private search. It infringed no legitimate expectation of privacy and hence was not a 'search' within the meaning of the Fourth Amendment." Id. at 120, 104 S.Ct. 1652 (footnote omitted). Notably, in responding to the concurring Justice's suggestion that the Court was "sanction[ing] warrantless searches of closed or covered containers or packages whenever probable cause exists as a result of a prior private search," id. at 129, 104 S.Ct. 1652 (White, J., concurring), the Court stressed that the visibility of the white powder was "far less significant than the facts that the container could no longer support any expectation of privacy, and that it was virtually certain that it contained nothing but contraband. ... A container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant." Id. at 120 n.17, 104 S.Ct. 1652 (majority opinion) (citations omitted).
Here we consider a private search made of a container of a different sort, though one equally protected by the Fourth Amendment. See United States v. Ross , 456 U.S. 798, 822-23, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) ("[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view." (citing Robbins v. California , 453 U.S. 420, 427, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) (plurality opinion))). Indeed, the State does not dispute that defendant's thumb drive and its digital contents were his "effects" and that he possessed a legitimate expectation of privacy **668 in these effects prior to the search by the grandmother. At issue here is the extent of defendant's expectation of privacy in those effects following that search, specifically-whether the thumb drive, or any part of it, could continue to support a legitimate expectation of privacy.
The State contends that the nature of the thumb drive as a container is such that Ms. Jones's mere "opening" of the thumb drive frustrated defendant's reasonable expectation of privacy in the entirety of its contents, thereby permitting Detective Bailey to conduct a follow-up search of any information stored on the device. According to the State, this position is consistent with a "broader view" of the private search doctrine's permissible scope, referred to by the State as the "container approach." See, e.g. , United States v. Runyan , 275 F.3d 449, 463-65 (5th Cir. 2001) (holding that while police could not permissibly search the defendant's floppy disks, CDs, and ZIP disks previously unopened by private searchers without having substantial certainty of the disks' contents, the private searchers' opening of other disks compromised the defendant's expectation of privacy in those closed containers and police were free to examine their contents, including any files not previously viewed by private searchers); see also Rann v. Atchison , 689 F.3d 832, 836-38 (7th Cir. 2012) (adopting Runyan 's rationale "that a search of any material on a computer disk is valid if the private party who conducted the initial search had viewed at least one file on the disk" and if police are "substantially certain" that the disk contains contraband (citing Runyan , 275 F.3d at 463-65 )), cert. denied , 568 U.S. 1030, 133 S.Ct. 672, 184 L.Ed.2d 464 (2012). But see United States v. Lichtenberger , 786 F.3d 478, 480, 488 (6th Cir. 2015) (holding that where the private searcher had "clicked on different folders" in the defendant's laptop and was unsure which files she had opened, the follow-up search was not permissible because the officer could not "proceed with 'virtual certainty' that the 'inspection of the [laptop] and its contents would not tell [him] anything more than he already had been told' " (alterations in original) (quoting Jacobsen , 466 U.S. at 119, 104 S.Ct. 1652 )). See also United States v. Sparks , 806 F.3d 1323, 1335-36 (11th Cir. 2015) (holding that where a private searcher viewed all of the images and one video contained in an album on the defendant's cell phone, the officer could subsequently view those images and that video, but the officer exceeded the scope of the prior search by *25 viewing a second video in that album that had not previously been watched), cert. denied , --- U.S. ----, 136 S. Ct. 2009, 195 L.Ed.2d 222 (2016), and cert. denied , --- U.S. ----, 137 S. Ct. 34, 196 L.Ed.2d 46 (2016) ; cf. United States v. Ackerman , 831 F.3d 1292, 1305-06 (10th Cir. 2016) (holding that where AOL's "hash value matching" screening algorithm identified one of the attachments to the defendant's e-mail as a match for child pornography but AOL never opened the e-mail itself, a government analyst exceeded **669 the private search by opening the e-mail and viewing the attachments because doing so "could have revealed virtually any kind of noncontraband information to the prying eye"). We conclude that the categorical approach proffered by the State is inconsistent with Jacobsen , which contemplates that a follow-up search will "enable[ ] [an officer] to learn nothing that had not previously been learned during the private search," 466 U.S. at 120, 104 S.Ct. 1652, and which requires that a "container ... no longer support any expectation of privacy," id. at 120 n.17, 104 S.Ct. 1652 (emphasis added).
We cannot agree that the mere opening of a thumb drive and the viewing of as little as one file automatically renders the entirety of the device's contents "now nonprivate information" no longer afforded any protection by the Fourth Amendment. Id. at 117, 104 S.Ct. 1652. An individual's privacy interest in his or her effects is not a liquid that, taking the shape of its container, wholly evaporates merely upon the container's opening, with no regard for the nature of the effects concealed therein. This is particularly true in the context of digital storage devices, which can retain massive amounts[2] of various types of information and which organize this information essentially by means of containers within containers. See, e.g. , Orin S. Kerr, Searches and Seizures in A Digital World , 119 Harv. L. Rev. 531, 555 (2005) (stating that "[a] computer is like a container that stores thousands of individual containers"). Unlike rifling through the contents of a cardboard box, a foray into one folder of a digital storage device will often expose nothing about the nature or the amount of digital information that is, or may be, stored elsewhere in the device. As the Court of Appeals majority recognized, "[d]ata stored on a thumb drive may be concealed among an unpredictable number of closed digital file folders, which may be further concealed within unpredictable layers of nested subfolders. A thumb drive search ... may require navigating through numerous closed file folders and subfolders." Terrell , 810 S.E.2d at 728 (majority opinion).[3] Following the mere opening of a thumb drive **670 by a private individual, an officer cannot proceed with "virtual certainty that nothing else of significance" is in the device "and that a manual inspection of the [thumb drive] and its contents would not tell him anything more than he already had been told." Jacobsen , 466 U.S. at 119, 104 S.Ct. 1652. Rather, there remains the potential for officers to learn any number and all manner of things "that had not previously been learned during the private search." Id. at 120, 104 S.Ct. 1652. Accordingly, the extent to which an individual's expectation of privacy in the contents of an electronic storage device is frustrated depends upon the extent *26 of the private search and the nature of the device and its contents.
In that regard, the trial court erred in concluding that Jones's "viewing of the purple flash drive effectively frustrated Defendant's expectation of privacy as to the contents of the purple flash drive," because this conclusion is not supported by its findings of fact. The trial court's findings do not establish the precise scope of Ms. Jones's search of the thumb drive and whether Detective Bailey possessed "virtual certainty that nothing else of significance was in the [thumb drive] and that a manual inspection of the [thumb drive] and its contents would not tell him anything more than he already had been told." Id. at 119, 104 S.Ct. 1652. Nor could the trial court have made such findings, as it is clear that the State failed to carry its burden of presenting competent evidence establishing that Bailey's warrantless search was permissible under the private-search doctrine.
At the suppression hearing, neither Ms. Jones nor Detective Bailey "testified to the exact folder pathway they followed to arrive at the" image of Sandy, "identified which folders or subfolders they opened or reviewed, [or] identified which subfolder of images they scrolled through to arrive at the" image of Sandy. Terrell , 810 S.E.2d at 725. Further, Ms. Jones's search of the thumb drive for images of defendant's housekeeper was far from exhaustive. While Ms. Jones clicked through "folders and sub-folders" before finding the image of Sandy, she was not aware that any of "the folders had a title. It was just a thumb -- it's the title of the thumbdrive, purple rain." Ms. Jones thought that "the pictures were all in one folder and then the other folders were like movies." After viewing several non-incriminating images, Ms. Jones ceased her search upon finding the image of Sandy. Ms. Jones did not view any of the incriminating photos that were later discovered by Detective Bailey in an entirely **671 separate folder.[4] Had Bailey possessed virtual certainty of the device's contents, presumably he would not have been "scrolling through ... a lot of photos" in different folders before, according to him, he "finally happened upon the photograph with the granddaughter." It is clear that Ms. Jones's limited search did not frustrate defendant's legitimate expectation of privacy in the entire contents of his thumb drive and that Detective Bailey's follow-up search to locate the image of Sandy was not permissible under Jacobsen because he did not possess "a virtual certainty that nothing else of significance was in the [thumb drive] and that a manual inspection of the [thumb drive] and its contents would not tell him anything more than he already had been told" by Jones. Jacobsen , 466 U.S. at 119, 104 S.Ct. 1652 ; see also id. at 120 n.17, 104 S.Ct. 1652 ("A container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant." (citations omitted)).
The State contends that requiring "virtual certainty" under Jacobsen confuses a sufficient condition with a necessary condition and that an officer can proceed with a follow-up search so long as he acts reasonably in replicating the private search based on the information conveyed to him. See, e.g. , Terrell , 810 S.E.2d at 739-40 (Stroud, J., concurring in part and dissenting in part) ("Detective Bailey sought to replicate Ms. Jones's private search but since she did not understand the organization of the drive, he could not go directly to the particular image he was seeking. ... Detective Bailey limited his search to a reasonable effort to find exactly what Ms. Bailey reported .... [T]he majority's analysis wrongly requires perfection from a private searcher who reports finding contraband and a law enforcement officer who seeks to confirm existence of contraband as reported by a private searcher."). Yet, the requirement that an officer possess "virtual certainty that nothing else of significance" is in a container is central to Jacobsen because the private-search doctrine, unlike other exceptions to the Fourth Amendment's warrant requirement, is premised fundamentally on *27 the notion that the follow-up search is not a "search" at all.[5] Jacobsen , 466 U.S. at 120, 104 S.Ct. 1652 ("It infringed no legitimate **672 expectation of privacy and hence was not a 'search' within the meaning of the Fourth Amendment."). If a container continues to support a reasonable expectation of privacy, it is a necessary corollary that an officer cannot proceed with a "search" of that container absent virtual certainty that he will not infringe upon that expectation of privacy.[6] Id. at 120 n.17, 104 S.Ct. 1652 ("A container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant." (citations omitted)).
Additionally, the State argues that this result will discourage private parties from coming forward with evidence of criminal activity and echoes the concern of the dissenting judge below of "plac[ing] law enforcement officers in a Catch 22 of being unable to confirm the private searcher's report without a search warrant because of the risk of accidental discovery of an image other than the one reported but being unable to get a search warrant without confirming the report." Terrell , 810 S.E.2d at 740. Assuming arguendo that it is true, as the State contends, that Detective Bailey possessed virtual certainty that the thumb drive contained contraband, it is unclear why such certainty would not translate into an affidavit sufficient to establish probable cause. See State v. Riggs , 328 N.C. 213, 219, 400 S.E.2d 429, 433 (1991) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (alteration in original) (quoting Illinois v. Gates , 462 U.S. 213, 244 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ) (emphasis added)); State v. Arrington , 311 N.C. 633, 638, 319 S.E.2d 254, 257-58 (1984) ("The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (quoting Gates , 462 U.S. at 238, 103 S.Ct. 2317 )).
Finally, the State argues in the alternative that the Court of Appeals changed the private-search doctrine test by declining to follow its prior decisions and erred in not remanding for additional findings on virtual certainty and the scope of the private search. We are not persuaded that the Court of Appeals majority altered the private-search doctrine in **673 this State,[7] which is controlled by Jacobsen , and for the reasons stated above we agree with the Court of Appeals majority that the evidence and findings make clear "that Detective Bailey's search was not authorized under the private-search doctrine because he did not conduct his search with the requisite level of 'virtual certainty' contemplated by Jacobsen ." Terrell , 810 S.E.2d at 735 (majority opinion).
For the reasons stated herein, we affirm the decision of the Court of Appeals.[8]
AFFIRMED.
Justice DAVIS did not participate in the consideration or decision of this case.

Like the Court of Appeals, we use pseudonyms in reference to Ms. Jones, Cindy, and Sandy.

For instance, Detective Bailey stated in his sworn affidavit for the search warrant that the thumb drive here had a capacity of two gigabytes and that "[o]ne gigabyte, or approximately one thousand (1,000) megabytes, is the approximate equivalent of five hundred thousand (500,000) double spaced pages of text and is estimated to be approximately two hundred and twelve (212) feet thick of paper." We mention this by way of illustration. The trial court did not make a finding on the capacity of the thumb drive, and its actual capacity is not relevant to our analysis of whether Bailey's follow-up search was permissible, which focuses on what Bailey knew (or, in this case, did not know) about the nature and extent of the private search before conducting his follow-up search.

The State argues that the Court of Appeals majority reached its decision in erroneous reliance on Riley v. California , a case addressing the "search incident to arrest" exception to the warrant requirement, as opposed to the private-search doctrine. 134 S. Ct. 2473. We conclude that the Court of Appeals recognized the different exceptions to the warrant requirement at issue in Riley and in this case and did not err in looking for guidance to the Court's discussion of electronic data in Riley . See Terrell , 810 S.E.2d at 729 ("While this is a private-search exception case, not a search-incident-to-arrest exception case, Riley 's guidance that the nature of an electronic device greatly increases privacy implications holds just as true ....").

The fact that Detective Bailey, but not Ms. Jones, observed these incriminating photos demonstrates that the record would not support any finding that Detective Bailey simply retraced the private search undertaken by Ms. Jones, particularly given that the incriminating photos other than the one of Sandy were contained in a separate folder.

This is true at least under the "Katz reasonable-expectation-of-privacy test" for a search, which the Supreme Court explained "has been added to, not substituted for, the common-law trespassory test." United States v. Jones , 565 U.S. 400, 409, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) (emphases omitted); see id. at 404, 132 S.Ct. 945 (stating that the government conducts a search when it "physically occupie[s] private property for the purpose of obtaining information"). The Court in Jacobsen did not address the trespassory test and, given our holding, we need not address defendant's argument that the private-search doctrine cannot survive in light of Jones .

For that reason, assuming the existence of the necessary "virtual certainty," flash drives can be the subject of a warrantless search performed pursuant to the private search doctrine.

The State contends that the decision in Robinson , 187 N.C. App. at 798, 653 S.E.2d at 892 (holding that police could search a single videotape "more thoroughly" than the private searcher), was controlling, stating that "[a] videotape is simply the thumb drive of an earlier time." The more obvious parallel to a videotape would be a single video file, which is not what we have before us in this case.

Neither party sought review of the decision of the Court of Appeals majority to "remand this matter to the trial court to determine, in the first instance, whether probable cause existed to issue the search warrant after excising from Detective Bailey's warrant application the tainted evidence arising from his unlawful search." Terrell , 810 S.E.2d at 735. For that reason, that decision remains undisturbed and we express no opinion concerning its correctness.