In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3502

STEVEN R. RANN,

*Petitioner-Appellant*,

*v.*

MICHAEL P. ATCHISON, Warden,[*]

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 08 CV 00792—**David R. Herndon**, *Chief Judge.*

ARGUED APRIL 4, 2012—DECIDED AUGUST 3, 2012

Before EASTERBROOK, *Chief Judge*, and FLAUM and
MANION, *Circuit Judges.*

MANION, *Circuit Judge.* In 2006, Steven Rann was con-
victed of two counts of criminal sexual assault and one

---

[*] Michael P. Atchison, the current warden of the Menard
Correctional Center, has been substituted for Donald Hulick
as respondent pursuant to Fed. R. App. P. 43(c).

count of possession of child pornography. He was sentenced to consecutive terms of twelve years' imprisonment on each sexual assault conviction and fifteen years' imprisonment on the child pornography conviction. Rann filed a direct appeal in state court arguing that he received ineffective assistance of counsel because his attorney did not seek to suppress incriminating evidence in the form of digital images obtained without a warrant from a zip drive and a camera memory card. The Illinois Appellate Court upheld his conviction, and the Illinois Supreme Court denied his petition to appeal. Having exhausted his state court remedies, Rann filed a petition for a writ of habeas corpus. The district court denied his writ, but did issue a Certificate of Appealability, allowing Rann to bring this appeal. Because we find that his ineffective assistance of counsel claim lacks merit, we affirm the district court's denial of Rann's habeas petition.

I.

In November 2006, following a jury trial in the Circuit Court of Saline County, Illinois, Steven Rann was convicted of two counts of criminal sexual assault and one count of child pornography. He received consecutive sentences of twelve years' incarceration on each sexual assault charge and fifteen years' incarceration on the child pornography charge. The facts relevant to Rann's habeas petition have been laid out in the Illinois Appellate Court's Rule 23 Order affirming Rann's conviction on direct appeal. They are as follows:

In January 2006, the defendant's biological daughter, S.R., who was then 15 years old, reported to the Eldorado police department that she had been sexually assaulted by the defendant and that he had taken pornographic pictures of her. Following her interview by the police, S.R. returned to her home, retrieved an Olympus digital camera memory card from the top of a big-screen television set in her parents' bedroom, and took the memory card to the police. The officer to whom she delivered the memory card, Deputy Sheriff Investigator Mike Jones of the Saline County Sheriff's Department, testified at the defendant's subsequent trial that no law enforcement officers accompanied S.R. on her return to her home, and there is no evidence in the record to suggest that S.R. was directed to attempt to recover evidence for the police or even to return home at all. Images downloaded from the memory card depict the defendant sexually assaulting S.R. and were introduced into evidence at the defendant's trial. . . . The images, taken in 2005, were admitted as propensity evidence . . . and do not relate directly to the charges of which the defendant was convicted in this case.

Sometime subsequent to S.R.'s initial interview with the police, S.R.'s mother brought Deputy Jones a computer zip drive that contained additional pornographic images of S.R. and pornographic images of K.G., who is the defendant's stepdaughter and S.R.'s half-sister. The images on the zip drive are from 1999 and 2000, when S.R. was approximately 9 years old and K.G. was approximately 15 years old, and are directly related to the charges of which the defendant

> was convicted in this case. Four of the images, taken around Christmas of 1999, were admitted into evidence at the defendant's trial. . . . Deputy Jones testified that no law enforcement officers were present when S.R.'s mother procured the zip drive, and there is no evidence in the record to suggest that S.R.'s mother was directed to attempt to recover evidence for the police.

Rann's trial counsel did not move to suppress the images found on the zip drive and camera memory card when they were introduced into evidence.

On these facts, the Illinois Appellate Court affirmed the convictions and sentence, and the Illinois Supreme Court denied Rann's petition for leave to appeal. In November 2008, Rann filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) in the United States District Court for the Southern District of Illinois. The matter was referred to the magistrate judge, who filed a report recommending that the petition be denied. The district court adopted the report and recommendation of the magistrate judge and entered judgment denying Rann's habeas petition. The district court subsequently granted Rann a Certificate of Appealability to consider whether the Illinois Appellate Court reasonably applied United States Supreme Court precedent when it held that Rann's trial counsel was not ineffective for failing to move to suppress the images recovered from the digital storage devices, and whether the police's viewing of those images constituted a significant expansion of a private search such that a warrant was required to permit police to view the images. This appeal followed.

## II.

We review the district court's denial of habeas relief de novo. *Crockett v. Hulick*, 542 F.3d 1183, 1188 (7th Cir. 2008). The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs our review of Rann's § 2254 petition. When, as here, a state court adjudicates a petitioner's ineffective assistance of counsel claim on the merits, a federal court can issue a writ of habeas corpus only if the state court's decision was either "contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Martin v. Grosshans*, 424 F.3d 588, 590 (7th Cir. 2005) (citing 28 U.S.C. § 2254(d)). The state court's application of federal law must not only be incorrect, but "objectively unreasonable." *See Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (citing *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000)). Typically, this would involve the state court "apply[ing] a rule different from the governing law set forth in [Supreme Court cases], or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Rann contends that he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), specifically arguing that his trial counsel's failure to move to suppress the images found on the zip drive and camera memory card constituted ineffective

assistance of counsel. The Illinois Appellate Court determined that these failures did not render Rann's counsel ineffective because any motion to suppress the evidence would have been unsuccessful.

Under *Strickland*, Rann must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Grosshans*, 424 F.3d at 590 (citing *Strickland*, 466 U.S. at 687). When reviewing claims of ineffective assistance of counsel in habeas petitions, however, we must honor any reasonable state court decision, since "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997). As Rann's ineffective assistance of counsel claim arises from his counsel's failure to move to suppress evidence, Rann must prove "'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'" *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).[1] *Strickland* requires that we presume counsel

---

[1]  As the court pointed out during oral argument, the Supreme Court ruled in *Stone v. Powell*, 428 U.S. 465 (1976), that where a state court has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner cannot be granted habeas relief on the ground that evidence obtained through an unconstitutional search and seizure was introduced at his trial. *See id.* at 494. The Illinois Appellate

(continued...)

"'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Ebert*, 610 F.3d at 411 (quoting *Strickland*, 466 U.S. at 690).

Rann's argument centers on his contention that, when the police searched the digital storage devices and viewed the images on them, they exceeded the scope of the private search conducted by S.R. and her mother. Since the subsequent search by the police exceeded the scope of the initial private search, so his argument runs, the police needed a warrant to "open" the digital storage devices and search them because the record contains no evidence that S.R. or her mother knew the digital storage devices contained images of child pornography prior to the police viewing. Since the police did not obtain a warrant prior to opening the digital storage devices and viewing the images, he claims their doing so constituted an unconstitutional warrantless search in violation of the Fourth Amendment. Rann thus argues that the Illinois Appellate Court unreasonably applied Supreme Court precedent when it found that the police did not expand the initial private search performed by S.R. and her mother and ruled

---

[1] (...continued)

Court, however, did not assert the benefit of *Stone*, and we have authority to decide Rann's argument on its merits. *See, e.g., Wood v. Milyard*, 132 S. Ct. 1826, 1832-34 (2012) (procedural forfeitures by a state should be enforced unless strong reasons justify dismissing a collateral attack on the forfeited procedural ground).

that any motion to suppress the images obtained via that search would have been unsuccessful.

Long-established precedent holds that the Fourth Amendment does not apply to private searches. *See Burdeau v. McDowell*, 256 U.S. 465, 475 (1971). When a private party provides police with evidence obtained in the course of a private search, the police need not "stop her or avert their eyes." *Coolidge v. New Hampshire*, 403 U.S. 443, 489 (1971). Rather, the question becomes whether the police subsequently exceed the scope of the private search. *See United States v. Jacobsen*, 466 U.S. 109 (1984). In *Jacobsen*, the Supreme Court ruled that individuals retain a legitimate expectation of privacy even after a private individual conducts a search, and "additional invasions of privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search." *Id.* at 115.

We have not yet ruled on the application of *Jacobsen* to a subsequent police search of privately searched digital storage devices, but the Fifth Circuit has in *United States v. Runyan*, 275 F.3d 449 (5th Cir. 2001). There, Runyan was convicted on child pornography charges after his ex-wife and several of her friends entered his residence and assembled a collection of digital media storage devices, which they turned over to the police. *Id.* at 456. Even though Runyan's ex-wife and her friends had only viewed a "randomly selected assortment" of the disks, the police searched each disk and found a trove of child pornography images. *Id.* at 460. The court applied *Jacobsen* to these facts and partially upheld the

government search, holding that a search of any material on a computer disk is valid if the private party who conducted the initial search had viewed at least one file on the disk. *Id.* at 465. Analogizing digital media storage devices to containers, the Fifth Circuit ruled that "police exceed the scope of a prior private search when they examine a closed container that was not opened by the private searches unless the police are already substantially certain of what is inside that container based on the statements of the private searches, their replication of the private search, and their expertise." *Id.* at 463. Since the police could be substantially certain, based on conversations with Runyan's ex-wife and her friends, what the privately-searched disks contained, they did not exceed the scope of the private search when they searched those specific disks. *Id.* at 465.[2]

---

[2] The Fifth Circuit ruled that the police did, however, exceed the scope of the initial private search when they searched the disks on which Runyan's ex-wife and her friends had not viewed at least one file. *Id.* at 464. There was no way the police could have known the contents of all the disks because the disks were unlabeled and because Runyan's ex-wife admitted she did not search all of the disks before she turned them over to the police. *Id.* The court reasoned that "[t]he mere fact that the disks that [the private individuals] did not examine were found in the same location in Runyan's residence as the disks they did examine is insufficient to establish with substantial certainty that all of the storage media in question contained child pornography." *Id.*

(continued...)

We find the Fifth Circuit's holding in *Runyan* to be persuasive, and we adopt it. As the Fifth Circuit reasoned, their holding

> is sensible because it preserves the competing objectives underlying the Fourth Amendment's protections against warrantless police searches. A defendant's expectation of privacy with respect to a container unopened by the private searchers is preserved unless the defendant's expectation of privacy in the contents of the container has already been frustrated because the contents were rendered obvious by the private search.   Moreover, this rule discourages police from going on "fishing expeditions" by opening closed containers.

*Id.* at 463-64. We find that *Runyan's* holding strikes the proper balance between the legitimate expectation of privacy an individual retains in the contents of his digital media storage devices after a private search has been conducted and the "additional invasions of privacy by the government agent" that "must be tested by the degree to which they exceeded the scope of the private search." *Jacobsen*, 466 U.S. at 115.

---

[2]  (...continued)

Since S.R. and her mother knew the contents of both of the digital media devices they provided to the police, that problem is not implicated here. For a full and thoughtful discussion of the applicability of *Jacobsen* to police searches performed subsequent to a private search of digital storage devices, see generally *Runyan*, 275 F.3d at 462-64.

Under *Runyan*'s holding, police did not exceed the scope of the private searches performed by S.R. and her mother when they subsequently viewed the images contained on the digital media devices. Rann argues that the Illinois Appellate Court relied on conjecture when it found that S.R. and her mother knew the contents of the devices they delivered to the police, pointing to the Illinois Appellate Court's finding that "[a]lthough no testimony exists regarding how the images on the zip drive came to be there . . . it seems highly likely that S.R.'s mother [compiled] the images on the zip drive herself, downloading them from the family computer." Rann argues that this is conjecture, yet he offers nothing but conjecture and speculation in its place.

Factual determinations of a state court are "presumed to be correct" and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Illinois Appellate Court specifically found that

> [t]his is not a case where multiple pieces of potential evidence were turned over to the police, who then had to sift through the potential evidence to discover if any factual evidence existed. To the contrary, in this case S.R. turned exactly one memory card over to the police, and her mother gave the police exactly one zip drive. We cannot imagine more conclusive evidence that S.R. and her mother knew exactly what the memory card and the zip drive contained.

These findings were reasonable based on the trial testimony. S.R. testified that she knew Rann had taken porno-

graphic pictures of her and brought the police a memory card that contained those pictures. S.R.'s mother also brought the police a zip drive containing porno-graphic pictures of her daughter. Both women brought evidence supporting S.R.'s allegations to the police; it is entirely reasonable to conclude that they knew that the digital media devices contained that evidence. The con-trary conclusion—that S.R. and her mother brought digital media devices to the police that they knew had no relevance to S.R.'s allegations—defies logic. For these reasons, the Illinois Appellate Court's factual findings are reasonable, and Rann has failed to present clear and convincing evidence—indeed, any evidence whatso-ever—to overcome the presumption of correctness we give to the state court's finding.

Likewise, even if the police more thoroughly searched the digital media devices than S.R. and her mother did and viewed images that S.R. or her mother had not viewed, per the holding in *Runyan*, the police search did not exceed or expand the scope of the initial private searches. Because S.R. and her mother knew the contents of the digital media devices when they delivered them to the police, the police were "substantially certain" the devices contained child pornography. *See Runyan*, 275 F.3d at 463. Accordingly, the subsequent police search did not violate the Fourth Amendment, and Rann's ineffective assistance of counsel claim must fail.

### III.

Rann's claim that the police's warrantless search of digital media devices brought to them by his victim and

his victim's mother violated the Fourth Amendment is without merit. Because he cannot prevail on his Fourth Amendment argument, Rann's ineffective assistance of counsel claim under *Strickland* must fail. Thus, the Illinois Appellate Court did not unreasonably apply federal law when it denied his appeal. The district court's decision is AFFIRMED and Rann's application for a writ of habeas corpus is DENIED.