Justice NEWBY dissenting.
*28 In this case we apply the private-search doctrine to an electronic storage device, a thumb drive.[1] The majority holds that the private-search doctrine cannot apply to a thumb drive because, even though some of the thumb drive has been previously opened, "an officer cannot proceed with 'virtual certainty that nothing else of significance' is in the device," citing United States v. Jacobsen , 466 U.S. 109, 119, 104 S Ct. 1652, 1659, 80 L. Ed. 2d 85, 98 (1984). The majority argues the "virtual certainty" language in Jacobsen compels its holding. This rigid approach, however, is a significant misapplication of that decision. Instead of "virtual certainty" that nothing else is contained in the thumb drive, the pivotal test in Jacobsen requires identifying the private search and evaluating "the **674 degree to which [the additional invasion of defendant's privacy by the government] exceeded the scope of the private search." Id. at 115, 104 S. Ct. at 1657, 80 L. Ed. 2d at 95. Jacobsen clearly states "[t]he Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." Id. at 117, 104 S. Ct. at 1658-59, 80 L. Ed. 2d at 97.
The private-search doctrine is an exception to the Fourth Amendment warrant requirement for a governmental search because a search conducted with the permission of a private person does not implicate a governmental intrusion; the private person's prior search frustrates any reasonable expectation of privacy. Here a concerned grandmother searched defendant's thumb drive in her home and found a picture of her sleeping, partially nude nine-year-old granddaughter. She then delivered the thumb drive to law enforcement, intending that they verify her finding and pursue criminal charges. Law enforcement did so. This transaction constitutes a textbook application of the private-search doctrine.
There is no dispute, as the trial court found, that the grandmother opened the thumb drive, opened the folder "Bad stuff," and saw various files. Likewise, there is no dispute that the grandmother opened the subfolder "red bone" and its file containing the image of her granddaughter. The only question should be whether the detective's opening of another subfolder, while trying to replicate the grandmother search, unlawfully exceeded the scope of that private search.
The majority holds that the private-search doctrine does not apply to an electronic storage device if the private searcher did not open all of the device's folders, subfolders, and files. It maintains the test is "whether the thumb drive, or any part of it, could continue to support a legitimate expectation of privacy." In other words, if the private searcher did not open every file, there is a possibility defendant's reasonable expectation of privacy to any unopened file has not been frustrated by the private search. Therefore, by simply opening the thumb drive, law enforcement committed an unlawful search. Even though it is indisputable that the grandmother opened the file containing the granddaughter's image, because the thumb drive contained files not searched by her, law enforcement cannot open it. In addition, to reach its result, the majority violates the standard of review by rejecting facts found by the trial court, which are supported by substantial evidence, and substitutes its own fact-finding.
The trial court took the correct approach. That court found the detective only searched the folder ("Bad stuff") identified by the grandmother.
**675 The detective stopped his search when he found the image of the granddaughter. The trial court applied Jacobsen as informed by panels of the Fifth *29 and Seventh Circuits, which analyzed facts similar to those presented here and asked the correct question: Did the governmental agent attempt to limit the scope of the search to that described by the private party? The trial court found that the search "did not exceed the scope of the private, prior search done by [the grandmother], but could have been more thorough" and ultimately denied defendant's motion to suppress. Because the trial court correctly applied the private-search doctrine, its decision should be affirmed. The majority's "virtual certainty" test needlessly eliminates the private-search doctrine for electronic storage devices, making it impossible for law enforcement to verify provided information. I respectfully dissent.
I. Facts
Jessica Jones,[2] the grandmother, located in her home and looked through a purple thumb drive (titled "Purple Rain") that belonged to her longtime boyfriend, defendant. She found an unlawful, disturbing photo of her granddaughter. She and her daughter brought the thumb drive to the Sheriff's Office and reported to Detective Hernandez that it contained, along with other images, her granddaughter's image. In laymen's terms, Jones explained her search process. Detective Hernandez completed a "Property/Evidence Status Form" that included a short summary of her conversation with Jones: "9 y/r victim's mom ... [and Jones] Brought USB that has photographs of 9 y/r shirtless and asleep. Labeled under 'Bad stuff.' " The next morning, Detective Bailey reviewed Detective Hernandez's report and met with Jones to discuss "the visual representations she had discovered on the purple flash drive" before examining the thumb drive to verify Jones's report.[3]
**676 In retracing Jones's search through the folder entitled "Bad stuff" and its subfolders, while looking for and before finding the granddaughter's image, Bailey discovered "fully nude photographs of an unknown child standing beside and [sic] adult female in various sexual positions" that Jones had neither observed nor reported. Detective Bailey only searched the folder identified by Jones, "Bad stuff." The "Bad stuff" subfolder titled "red bone" contained the image of the granddaughter; the "Bad stuff" subfolder titled "Cabaniia" contained the two images of the unidentified nude children viewed by Detective Bailey. Detective Bailey sought and obtained a search warrant to forensically examine the thumb drive for any hidden files. Upon executing the warrant, a SBI technician extracted ten additional images of child pornography, which had previously been deleted from the subfolder titled "Cabaniia." Defendant faced charges for the photograph of the granddaughter as well as for possessing the two images of the children as observed by Detective Bailey and the ten images discovered by the SBI technician.
Defendant moved to suppress all evidence obtained by and through Detective Bailey upon his viewing of the thumb drive Jones brought to the police. During the suppression hearing, defense counsel identified the issue as, inter alia , "to what extent did Detective Bailey's subsequent search without a search warrant exceed the scope of the search done by the private citizen." Counsel argued that, because Detective Bailey discovered "entirely different type images," his action "without a search warrant clearly exceeds the scope of *30 the search done by a private individual, in this case, [Jones]." Because Detective Bailey happened upon the additional images while retracing Jones's search for the granddaughter's image, defendant argued those images could not serve as a basis for probable cause for the warrant.
Following a hearing on the motion to suppress, the trial court made its ruling:
I've read through the case law handed up, read the case law in North Carolina, it appears to me that this -- in exercising my discretion, it appears that there was a private party who went into this flashdrive and, by doing so, I believe the Court says it frustrated the defendant's reasonable expectation of privacy as to the contents of that flashdrive.
Therefore, thereafter, when the police officer went into that same thumbdrive ... to confirm what has been stated to him, he found additional matters and he did so **677 in a manner that was, perhaps, more thoroughly than the initial examination by [Jones]. He ran into more images than what [Jones] ran into.
Given all of this, in exercising my discretion, the motion to suppress will be denied.
The trial court's written order included findings regarding the relationship between defendant and Jones and a description of the private search conducted here:
2. On January 13, 2014, [Jones] was in her home; defendant was not present. [Jones] looked inside of a briefcase belonging to the defendant, which stayed in her home in a usual and customary manner. On this date, defendant's briefcase was in [Jones's] den. Inside the briefcase, [Jones] found, among other items, a USB flash drive, sometimes referred to as a thumb drive. The flash drive in issue here was purple in color. [Jones's] stated purpose for looking in defendant's briefcase was to put a face to someone that defendant had talked about. [Jones's] entry into defendant's briefcase and the contents therein were solely at her own volition and not connected with or at the suggestion of any law enforcement person or organization.
3. [Jones] inserted the purple flash drive into a shared Apple computer and discovered, among other visual representations, a picture of her granddaughter, [name redacted] who appeared to be asleep and who was nude from the waist up with breasts displayed. After consulting with her daughter, the mother of [the child], [Jones] and her daughter, on January 13, 2014, took the purple flash drive to the Onslow County Sheriff's Department.
Next, the trial court made findings regarding Jones's delivery of the purple flash drive to law enforcement.
4. On January 13, 2014, [Jones] met with Detective Lucinda Hernandez to discuss what she had found on the purple flash drive. Detective Hernandez accepted the purple flash drive and logged it into the Crime Scene Investigation (CSI) Unit of the Onslow County Sheriff's Department. Detective Hernandez did not view the purple flash drive.
**678 5. On January 14, 2014, [Jones] again appeared at the Onslow County Sheriff's Department to meet with Detective Eric Bailey concerning the purple flash drive and the contents that she had seen on that flash drive. Detective Bailey discussed with [Jones] the visual representations she had discovered on the purple flash drive.
The trial court found that law enforcement retraced Jones's private search through the folder identified by Jones as containing the granddaughter's image and saw additional incriminating and corroborating photographs. Ultimately, Detective Bailey confirmed what Jones told him about the thumb drive:
6. Following his discussion with [Jones], Detective Bailey went to the CSI Unit to confirm on the purple flash drive what he had been told by [Jones]. Detective Bailey did not remove the purple flash drive from the CSI Unit where it was being held securely as a matter of evidence. The CSI technician placed the purple flash drive into CSI's *31 computer and selected the folder [Bad stuff ] that has been identified by [ Jones ] as containing the picture of her granddaughter [name redacted]. This viewing in the CSI Unit confirmed what [Jones] had told Detective Bailey that she had discovered on the flash drive. In addition to the picture of [the granddaughter] Detective Bailey saw photographs of other nude or partially nude prepubescent females posing in sexual positions.
7. The images observed by Detective Bailey corroborated the information provided to him by [Jones]. Based upon that corroboration and [Jones's] statements, Detective Bailey then obtained a search warrant in order to conduct a complete and thorough forensic examination of the purple flash drive.
(Emphasis added.) The trial court found as fact that "8. Detective Bailey's initial search and examination of the purple flash drive in the CSI Unit did not exceed the scope of the private, prior search done by [Jones], but could have been more thorough."
Having made the preceding findings, the trial court concluded the search was valid under the private-search doctrine:
**679 2. [Jones's] viewing of the purple flash drive did not violate the Fourth Amendment because she was a private party .... Her viewing of the purple flash drive effectively frustrated Defendant's expectation of privacy as to the contents of the purple flash drive, and thus the later viewing by Detective Bailey at her request and upon presentation of the flash drive to [law enforcement] did not violate Defendant's rights under the Fourth Amendment.
3. None of the Defendant's [constitutional] rights ... were violated during the seizure and search of the purple flash drive in this case.
The trial court thus denied defendant's motion to suppress, and the State introduced into evidence thirteen images all retrieved from the "Bad stuff" folder. Regarding the granddaughter's image, the jury convicted defendant of one count of possessing a photographic image from peeping and one count of second-degree sexual exploitation of a minor. The jury also convicted defendant of twelve counts of third-degree sexual exploitation of a minor based on the twelve other images. Defendant appealed.
In a divided opinion, the Court of Appeals first determined that the private-search doctrine did not apply to Detective Bailey's search because the thumb drive was not a "single container" and there was not "virtual certainty" that the thumb drive contained only contraband or material reported by Jones. State v. Terrell , --- N.C. App. ----, 810 S.E.2d 719, 726 (2018). The Court of Appeals acknowledged that the private-search doctrine would typically require factual findings as to the specific scope of Jones's and Bailey's searches, id. at 734, like those made by the trial court here. But, because Jones did not report the exact file path for the granddaughter's image, Bailey could not be virtually certain that he would find nothing else of significance during his search. Id. After concluding that " Jacobsen 's virtual-certainty requirement was not satisfied," the Court of Appeals opined that "the precise scope of both searches [was] immaterial," id. at 732 ; therefore, the court did not remand for further factual findings on that issue, id. at 735. The Court of Appeals did, however, remand for a determination of whether the search warrant application would still supply "probable cause to issue the search warrant to forensically examine the thumb drive." Id. at 736.
The dissent maintained that the scope of the subsequent search was not only material but determinative of the legal issue here. Id. at 740 (Stroud, J., concurring in part and dissenting in part). Even though the **680 dissent did not view the thumb drive as a "single container" now fully opened by Jones's private search, the search did not violate the Fourth Amendment because Detective Bailey limited his search to efforts to find an image he was substantially certain was on the thumb drive and stopped his search when he found it. Id. at 739. Thus, "[e]ven if all of the other images are excluded from consideration, the granddaughter's image along with the other information in the warrant application and affidavit could support a finding of *32 probable cause to issue the search warrant." Id. at 738.
II. Issue Presented
At this Court, the majority now affirms the Court of Appeals's "virtual certainty" approach. This unrealistic standard essentially holds the private-search doctrine cannot be applied here because, with electronic storage devices, there is never a "virtual certainty" that a government searcher will not discover other unopened material. To reach this sweeping conclusion, the majority misapplies Jacobsen , ignores the precise facts leading to the discovery of the different photos, blurs the distinction between electronic storage devices and electronic computer-type devices, and refuses to follow the accepted standard of review by substituting its own findings of fact. It holds that the private-search doctrine does not apply if "the thumb drive, or any part of it, could continue to support a legitimate expectation of privacy." According to the majority, whether the governmental search included a privately opened file is immaterial as long as other unopened files exist.
The correct question, however, is what files and folders were opened, not whether some remained unopened. The Court should ask to what extent Detective Bailey's subsequent search without a search warrant exceeded the scope of the private search. The trial court seems to say that, by having opened the purple thumb drive, defendant's expectation of privacy was thwarted as to all of its files. This broad application, however, is unnecessary to resolve the precise issue presented by this case. There is no evidence that Detective Bailey looked in any folder other than the one identified by Jones as labeled "Bad stuff." Thus, this case presents the issue of whether defendant's reasonable expectation of privacy was lost as to some, or all, of the files contained in the folder "Bad stuff" previously opened and reviewed by Jones. Each of the three separate groups of images, all located in the folder "Bad stuff," require an analysis under the private-search doctrine:
1) the granddaughter's image, located in the subfolder "red bone," which was clearly opened by Jones and Detective Bailey;
**681 2) the unidentified nude children, discovered by Detective Bailey in the subfolder "Cabaniia," while attempting to retrace Jones's search, but before finding the granddaughter's image; and
3) the ten images located in the subfolder "Cabaniia" discovered by the SBI technician pursuant to the search warrant.
The correct approach of Jacobsen requires identifying the initial private search and evaluating "the degree to which [the additional invasion of defendant's privacy] exceeded the scope of the private search." Jacobsen , 466 U.S. at 115, 104 S. Ct. at 1657, 80 L. Ed. 2d at 95.
III. Proper Appellate Review of the Trial Court Order
"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. ... Conclusions of law are reviewed de novo and are subject to full review." State v. Biber , 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citations omitted). Here the trial court order meets this standard. Competent evidence supports the trial court's findings of fact, and those findings of fact support its conclusions of law and its ultimate denial of defendant's motion to suppress. Most significantly, the trial court made the following findings of fact which are supported by the evidence:
6. .... The CSI technician placed the purple flash drive into CSI's computer and selected the folder that has been identified by [ Jones ] as containing the picture of her granddaughter [name redacted]. This viewing in the CSI Unit confirmed what [Jones] had told Detective Bailey that she had discovered on the flash drive. In addition to the picture of [the granddaughter] Detective Bailey saw photographs of other nude or partially nude prepubescent females posing in sexual positions.
....
*33 8. Detective Bailey's initial search and examination of the purple flash drive in the CSI Unit did not exceed the scope of the private, prior search done by [Jones], but could have been more thorough.
(Emphasis added.) Based on these findings, the trial court concluded:
2. .... [Jones's] viewing of the purple flash drive effectively frustrated Defendant's expectation of privacy as to the contents of the purple flash drive, and thus the **682 later viewing by Detective Bailey at her request and upon presentation of the flash drive to [law enforcement] did not violate Defendant's rights under the Fourth Amendment.
IV. Law & Analogous Cases
The Fourth Amendment, applied to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by the government. U.S. Const. amend. IV. Nonetheless,
[l]ong-established precedent holds that the Fourth Amendment does not apply to private searches. See Burdeau v. McDowell , 256 U.S. 465, 475, 41 S. Ct. 574, 65 L. Ed. 1048 (1921). When a private party provides police with evidence obtained in the course of a private search, the police need not "stop her or avert their eyes." Coolidge v. New Hampshire , 403 U.S. 443, 489, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). Rather, the question becomes whether the police subsequently exceed the scope of the private search. See United States v. Jacobsen , 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).
Rann v. Atchison , 689 F.3d 832, 836 (7th Cir. 2012). "The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred." Jacobsen , 466 U.S. at 115, 104 S. Ct. at 1657, 80 L. Ed. 2d at 95.
In Jacobsen employees of a private shipping carrier notified federal Drug Enforcement Administration (DEA) agents that they had opened a damaged package in accord with company policy, cut open a tube inside the package, and discovered a white powdery substance in the innermost of a series of four plastic bags that had been concealed therein. Id. at 111, 104 S. Ct. at 1655, 80 L. Ed. 2d at 92-93. The employees of the private shipping carrier reassembled the package, replacing the plastic bags in the tube and returning the tube back to the cardboard box. Id. at 111, 104 S. Ct. at 1655, 80 L. Ed. 2d at 93. When the first federal agent arrived, he retraced the private search, removing the tube from the box and the plastic bags from the tube, and observed the white powdery substance. Id. at 111-12, 104 S. Ct. at 1655, 80 L. Ed. 2d at 93. The agent then continued the search, opening all the bags and removing a trace of the powder for chemical testing. Id. at 111, 104 S. Ct. at 1655, 80 L. Ed. 2d at 92. The field chemical tests revealed the substance was cocaine, and federal agents obtained and executed a warrant to search the location **683 to which the package was addressed. Id. at 111-12, 104 S. Ct. at 1655, 80 L. Ed. 2d at 93.
The Court in Jacobsen first set out the Fourth Amendment protections against unreasonable searches and seizures, defining an impermissible search as "occur[ring] when there is some meaningful interference with an individual's possessory interests in that property" if that interference is unreasonable and conducted by the government. Id. at 113, 104 S. Ct. at 1656, 80 L. Ed. 2d at 94. Thus, the protection "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' " Id. at 113-14, 104 S. Ct. at 1656, 80 L. Ed. 2d at 94 (quoting Walter v. United States , 447 U.S. 649, 662, 100 S. Ct. 2395, 2404, 65 L. Ed. 2d 410, 421 (1980) (Blackmun, J., dissenting)).
Regardless of "[w]hether those [employees'] invasions [of respondents' package] were accidental or deliberate, and whether they were reasonable or unreasonable, they did not violate the Fourth Amendment because of their private character." Id. at 115, 104 S. Ct. at 1657, 80 L. Ed. 2d at 95 (footnote omitted); see id. at 117, 104 S. Ct. at 1658, 80 L. Ed. 2d at 96 ("[T]he Fourth *34 Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities ...." (quoting United States v. Miller , 425 U.S. 435, 443, 96 S. Ct. 1619, 1624, 48 L. Ed. 2d 71, 79 (1976) )). "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now nonprivate information ...." Id. at 117, 104 S. Ct. at 1658, 80 L. Ed. 2d at 96. The Court identified the standard by which to assess the subsequent government action: "The additional invasions of respondents' privacy by the [DEA] agent must be tested by the degree to which they exceeded the scope of the private search." Id. at 115, 104 S. Ct. at 1657, 80 L. Ed. 2d at 95 (citing Walter , 447 U.S. 649, 100 S. Ct. 2395, 65 L. Ed. 2d 410 ). Notably, Jacobsen did not involve the search of a digital storage device but rather "an ordinary cardboard box." Id. at 111, 104 S. Ct. at 1655, 80 L. Ed. 2d at 93. The Court noted that it was indisputable that the government could use the employees' testimony about what they observed when they opened the package.
If that is the case, it hardly infringed respondents' privacy for the agents to reexamine the contents of the open package by brushing aside a crumpled newspaper and picking up the tube. The advantage the Government gained thereby was merely avoiding the risk of a flaw in the **684 employees' recollection, rather than in further infringing respondents' privacy. Protecting the risk of misdescription hardly enhances any legitimate privacy interest, and is not protected by the Fourth Amendment.
Id. at 118-19, 104 S. Ct. at 1659, 80 L. Ed. 2d at 97-98.
The Fifth Circuit in United States v. Runyan, 275 F.3d 449 (5th Cir. 2001), applied Jacobsen in the context of a private search of digital storage devices similar to the thumb drive at issue here. In that case Runyan was convicted on child pornography charges after his former wife and several of her friends collected various digital media storage devices from his home and turned them over to the police. Id. at 453, 455. The Fifth Circuit analogized digital media storage devices to physical containers. That court determined that "police exceed the scope of a prior private search when they examine a closed container that was not opened by the private searchers unless the police are already substantially certain of what is inside that container based on the statements of the private searchers, their replication of the private search, and their expertise." Id. at 463. Thus, even an unopened container may fall within the scope of the private search if a "defendant's expectation of privacy in the contents of the container has already been frustrated because the contents were rendered obvious by the private search." Id. at 463-64 (noting that "this rule discourages police from going on 'fishing expeditions' by opening closed containers").
Because the police could be substantially certain, based on conversations with Runyan's former wife and her friends, about the contents of the privately searched disks, police did not exceed the scope of the private search when they searched those specific disks, even if they searched the same disks more thoroughly. Id. at 465. The police only exceeded the scope of the private search when they searched different disks, those that Runyan's former wife and her friends had not previously "opened" or, in other words, viewed at least one file therein. Id. at 463-64.
Similarly, the Seventh Circuit in Rann considered the merits of "whether the police's viewing of [certain images stored on digital devices] constituted a significant expansion of a private search such that a warrant was required to permit police to view the images," Rann , 689 F.3d at 835, and applied Runyan to similar facts:
S.R. testified that she knew [the defendant] Rann had taken pornographic pictures of her and brought the police a memory card that contained those pictures. S.R.'s **685 mother also brought the police a zip drive containing pornographic pictures of her daughter. Both women brought evidence supporting S.R.'s allegations to the police; it is entirely reasonable to conclude that they knew that the digital media devices contained that evidence. The contrary conclusion-that S.R. and her mother brought digital media devices to the police *35 that they knew had no relevance to S.R.'s allegations-defies logic.
Id. at 838 ; see id. at 837-38 (Given the lower court's assessment that, because S.R. "turned exactly one memory card over to the police, and her mother gave the police exactly one zip drive," the appellate court stated that it could not "imagine more conclusive evidence that S.R. and her mother knew exactly what the memory card and the zip drive contained."). Accordingly, "even if the police more thoroughly searched the digital media devices ... and viewed images that [the prior search ] ... had not viewed ," the police search did not exceed the scope of the prior search because "the police were 'substantially certain' the devices contained child pornography" as alleged by the private searchers. Id. at 838 (emphasis added) (applying Runyan , 275 F.3d at 463 ).
Thus, in the digital storage context, the question remains "whether the police subsequently exceed the scope of the private search." Id. at 836 (citing Jacobsen , 466 U.S. at 109, 104 S. Ct. at 1652, 80 L. Ed. 2d at 85 ); accord Runyan , 275 F.3d at 463-64. When the police are substantially certain the devices contain the contraband as alleged by the private searchers, police do not exceed the scope of the private search when they examine the same materials more thoroughly or when they search additional items within the same container previously opened by a private party. Rann , 689 F.3d at 838 ; Runyan , 275 F.3d at 461-63.
V. Analysis
The analysis the Fifth and Seventh Circuits apply is correct. Using the container analogy as instructed by Runyan and Rann , defendant left in Jones's home a digital "box of folders" that she could open and examine. When she did so, defendant's expectation of privacy became frustrated; she had possession of and gained access to the entire contents of the thumb drive. Its contents, specifically, various photos of defendant with adult females and the image of her nine-year-old partially nude granddaughter located in the "Bad stuff" folder, became obvious to Jones, the private searcher.
When she turned over the thumb drive to law enforcement, she did so without limitation and authorized them to look for her granddaughter's **686 image. Nonetheless, she gave a layman's description of her search process and identified the location of her granddaughter's image as "[l]abled under 'Bad stuff.' " Thereafter, police in good faith attempted to replicate the grandmother's search.
Detective Bailey's follow-up search to verify Jones's discovery can be a more thorough review of the same privately searched materials or can uncover more items from the same container Jones previously opened. See Runyan , 275 F.3d at 464-65. Like in Runyan and Rann , even if Jones did not open every picture file it contained, Detective Bailey could be substantially certain, based on conversations with her, what the privately searched thumb drive contained. As found by the trial court, he did not exceed the scope of the private search when he searched the one and only thumb drive he received and confined that search within the "Bad stuff" folder as identified by Jones, even if Detective Bailey's search was more thorough than Jones's search. Runyan , 275 F.3d at 465.
In addressing each group of images separately, it is clear that none should be suppressed. When Jones opened the purple thumb drive, she went to the folder labeled "Bad stuff." Though she could not recall the names of the subfolders that contained the images she saw, she found her granddaughter's image in one of these subfolders (ultimately identified as "red bone"). Clearly, Jones's search thwarted defendant's reasonable expectation of privacy as to that subfolder, and the private-search doctrine allowed the detective to enter that subfolder. Entering the "Bad stuff" folder and the "red bone" subfolder mirrored the precise scope of the private search. "The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment." Jacobsen , 466 U.S. at 119-20, 104 S. Ct. at 1660, 80 L. Ed. 2d at 98 (citing Coolidge , 403 U.S. at 487-90, 91 S. Ct. at 2048-50, 29 L. Ed. 2d at 595-96 ; Burdeau , 256 U.S. at 475-76, 41 S. Ct. at 576, 65 L. Ed. at 1051 ).
*36 As Detective Bailey tried to replicate Jones's search, he entered a subfolder in "Bad stuff" titled "Cabaniia," within which he found the photos of the unidentified nude children. It is unclear if Jones actually opened the "Cabaniia" subfolder. In evaluating Detective Bailey's search, the question is "the degree to which [he] exceeded the scope of the private search." Jacobsen , 466 U.S. at 115, 104 S. Ct. at 1657, 80 L. Ed. 2d at 95. By entering the folder "Bad stuff," Jones frustrated defendant's reasonable expectation of privacy as to any file it contained. The trial court found that in discovering the two additional photos depicting child pornography, Detective Bailey's search "did not exceed the scope of the private, prior search done by [Jones], but could have been more **687 thorough." A more thorough search does not remove the search from the private-search doctrine. A forensic search, authorized by a search warrant substantiated by Jones's statements to Detective Bailey, revealed the final ten photos.
The majority holds that there can be no lawful governmental search under the private search doctrine as long as "the thumb drive, or any part of it, could continue to support a legitimate expectation of privacy." Thus, it refuses to address the precise steps taken by Detective Bailey to replicate the search done by Jones or to address each category of evidence separately. It does not even mention that the search was limited to the "Bad stuff" folder. It finds this approach unnecessary as it concludes there must be "virtual certainty" the thumb drive contains nothing else besides the illegal photo. Regardless of whether Jones opened the purple thumb drive and the folder "Bad stuff," unless she also testified she opened each of the other folders and files and reviewed their contents, the majority concludes the private-search doctrine is inapplicable, even as to the precise photo identified by Jones.
The majority wrongly asks whether any folders or files in the thumb drive were unopened by Jones. By its approach, if any of the subfolders or files remained unopened, then Detective Bailey's opening of the thumb drive was an unconstitutional search because he could not be virtually certain that nothing else of significance was on the thumb drive. The majority assumes, without a factual basis, that Detective Bailey engaged in an extensive search of "the entire contents of" the thumb drive without any direction from Jones, opining that Detective Bailey had been " 'scrolling through ... a lot of photos' in different folders before, according to him, he 'finally happened upon the photograph with the granddaughter.' " The trial court found facts to the contrary.
The record indicates that here the grandmother identified the one folder, within which law enforcement could locate the granddaughter's image. According to the finder of fact, Detective Bailey reported that he "selected the folder [Bad stuff ] that had been identified by [ Jones ] as containing the picture of her granddaughter [name redacted]." (Emphasis added.) This Court does not have the thumb drive before us for inspection. Based on the facts presented to the trial court, which did have the thumb drive, however, there is no indication that Jones did not sufficiently understand the features of the thumb drive to be able to direct Detective Bailey to "the pictures [that] were all in one folder." Competent evidence presented to the trial court certainly supports the trial court's finding that Detective Bailey's efforts to verify Jones's allegations fell within the scope of her initial search. Under the majority's **688 circular approach, law enforcement cannot conduct a subsequent search to verify the reported image within the "Bad stuff" folder-for risk of inadvertently seeing other subfolders and files-at least not without the probable cause supplied by verifying its contents.
The analysis of the opinions of both the Court of Appeals majority and this Court are influenced by Riley v. California , 573 U.S. 373, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014), in which the Supreme Court of the United States declined to extend the search-incident-to-arrest exception to police searches of digital data on cell phones. The court below determined that Riley "guides our decision in how best to apply a doctrine originating from the search of a container limited by physical realities to a search for digital data on an electronic storage device that is not." Terrell , 810 S.E.2d at 729 (majority opinion) (citations *37 omitted). The Court of Appeals concluded that a thumb drive's "potential to hold vastly more and distinct types of private [electronic] information" renders the container analogy inapplicable for Fourth Amendment purposes. Id. at 728-29 (citing Riley , 573 U.S. at 386, 134 S. Ct. at 2485, 189 L. Ed. 2d at 442-43 ); see also Riley , 573 U.S. at 393, 134 S. Ct. at 2488-89, 189 L. Ed. 2d at 446 ("Modern cell phones ... implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse."). Riley simply does not apply here. The cell phone in that case was not a finite container like the thumb drive here, whose contents had been previously viewed by a third party; therefore, the owner's expectation of privacy was not frustrated as to any aspect of the cell phone.
VI. Conclusion
While computers and cell phones may conceivably open the door to seemingly unlimited mounds of information, those devices are not implicated here. The purple thumb drive was a storage device with limited space. Moreover, Detective Bailey did not engage in a "fishing expedition" but retraced Jones's search within the thumb drive's folder, "Bad stuff." Rather than remedying a constitutional violation, the majority's opinion here only frustrates concerned citizens' attempts to report criminal activity against children and prevents law enforcement from verifying the allegations.
Under our time-honored standard of review, the trial court appropriately denied the motion to suppress. It found facts supported by the evidence and correctly applied the law. Its order should be upheld. I respectfully dissent.

A thumb drive is a small, usually rectangular device used for storing electronic data. The data is typically contained in individual files (e.g., a photograph, a document, a song, etc.), and the files are usually organized in folders and subfolders. See Merriam-Webster's Collegiate Dictionary 485 (11th ed. 2007) (defining a "folder" as "an organizational element of a computer operating system used to group files or other folders together").

This name is a pseudonym used by the trial court and the Court of Appeals.

At the suppression hearing, Jones described her search of the purple thumb drive, saying "when I opened it and the images came up. ... I saw images of adult women and what I presumed was children, but they were not inappropriate, meaning that they were clothed. They just looked like little young girls." She viewed images of adult females, some naked and some clothed. Jones noted that "the pictures were all in one folder, and she "scrolled down" by "go[ing] into folders and sub-folders." Jones then discovered her granddaughter's image "in bed and she was asleep and she's exposed from the waist up." Jones explained that she "got upset" because she "never in a million years expected to find anything like that" and then ended her search. Detective Bailey testified at the suppression hearing that, while retracing Jones's search, he "observed other young females, prepubescent females, unclothed, also some that were clothed," but when he was able "to verify what [Jones] told [him] she had seen on the flashdrive .... [he] completed [his] search." Thus, Detective Bailey discovered the two images of child pornography before finding the granddaughter's image.